**Mildred M. HAYES, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–168.**

United States Court of Veterans Appeals.

Submitted Nov. 26, 1990.

Decided March 21, 1991.

Rick Surratt (non-attorney practitioner), was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Joan E. Moriarty, were on the brief, Washington, D.C., for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

KRAMER, Associate Judge:

Appellant, Mildred M. Hayes, brings this appeal claiming entitlement to accrued benefits due her late husband, William C. Hayes. The Board of Veterans' Appeals (BVA) denied the appellants' claim on the grounds that there was insufficient evidence of record at the time of William Hayes' death to demonstrate entitlement to an increase in his disability rating. As a result of ambiguities between the BVA decision and the evidence of record, we remand this case to the BVA for redetermi-

nation and an adequate statement of the reasons or bases supporting its decision.

## I.

The appellants' late spouse was a World War II veteran with a long history of cancer and cancer-related medical problems dating back to the discovery of a tumor in his right upper mediastinum in 1944. In early 1945 it was discovered that he had affected cervical lymph nodes and as a result underwent radiation therapy to his right neck which caused considerable tissue necrosis in that region. By 1987 service connection had been established for the following disabilities: Hodgkin's disease with lobectomy of the upper lobe of the right lung with rib resection and adenocarcinoma of the left breast rated as 60% disabling; the residuals of nitrogen mustard therapy with right lower extremity weakness rated as 10% disabling; X-ray burn scar of the lateral neck with limitation of motion rated as 10% disabling; and hypothyroidism and status post squamous cell carcinoma of the neck rated as noncompensable. His combined disability rating as of June 1987 was 70%.

On June 3, 1987, the veteran choked on a piece of food which had lodged in his throat while he was eating. Although he was rescued with the Heimlich maneuver shortly after losing consciousness, the veteran continued to have trouble swallowing after that time. As a result, he subsequently underwent an examination of his swallowing process later that month which revealed a narrowing of the upper esophagus. The veteran's doctor at the time, Dr. John Cook, then referred him to Dr. Thomas Gates, stating in his letter of referral, "[t]his [area of narrowing] is right under an area of maximal radiation and the concern for development of squamous metaplasia/carcinoma is obvious." R. at 34.

After Dr. Gates' unsuccessful attempt to perform an esophagoscopy with a flexible endoscope, the veteran was admitted to the hospital for a rigid endoscope examination and biopsy of the affected area. Despite encountering an ulcerated lesion and thickening of the esophagus wall, the rigid endo-

scope examination failed to discover any foreign masses. It was also reported that the biopsies obtained from the veteran's esophagus were negative. As a result, it was then decided to have the veteran undergo dilations of the esophagus in an attempt to improve his swallowing ability.

These dilations, however, caused the veteran to have a substantial systemic reaction requiring medical treatment. Although the dilations significantly improved the veteran's ability to swallow, his reactions to them caused Dr. Cook to become worried that the esophageal lesion was infected, and he subsequently discussed with the veteran the possibility that the lesion could be cancerous. R. at 43.

From this point onward, the veteran's medical condition continued to worsen. On November 9, 1987, he filed an informal claim with the Veterans' Administration (now the Department of Veterans Affairs) (VA) for an increase in his disability rating. In support of this claim he sent the VA medical evidence relating to the choking incident and period subsequent thereto discussed above. This evidence was received by the VA on January 21, 1988. Although the lesion was diagnosed as cancerous sometime in mid-December 1987, the record is unclear whether evidence pertaining to this cancer diagnosis was received by the VA before the veteran's death. *See infra.* Nevertheless, the VA later stated in the Statement of the Case (SOC) that it had

> received medical evidence ... showing the veteran was treated for an esophageal stricture and carcinoma of the esophagus that was felt to be the result of radiation treatment for the service connected Hodgkin's disease.

R. at 81. The VA attempted to schedule a VA examination for the veteran, but he died before one could be held. His death certificate listed the immediate cause of death as cardiac arrest due to coronary heart disease. It also listed the esophageal cancer as a "significant condition contributing to death." R. at 44.

After the veteran's death on February 20, 1988, the appellant filed a formal claim for accrued benefits with the VA on the grounds that the veteran's disability rating should have been 100% commencing with the onset of the esophageal cancer in June 1987. (In support of this claim the appellant also submitted additional medical evidence pertaining to the diagnosis and treatment of the veteran's cancer which was received by the VA after his death. As our holding makes it unnecessary to do so, however, the Court will not address the issue of whether 38 U.S.C. § 3021 (1988) mandates or precludes the consideration of this evidence by the BVA. *See infra.*) The Roanoke, Virginia, VA Regional Office denied the appellant's claim on the grounds that there was insufficient evidence on file at the date of the veteran's death to establish entitlement to an increased disability rating. The appellant then appealed to the BVA.

On February 2, 1990, the BVA denied the appellant's claim. After reviewing the evidence on file at the date of the veteran's death, the BVA stated:

### DISCUSSION AND EVALUATION

The evidence of record at the time of the veteran's death relates to the diagnosis and treatment for adenocarcinoma of the esophagus and a paraesophageal abscess. That evidence does not show that the veteran's service connected disorders had increased in severity during the year prior to his death; therefore, the Board finds that entitlement to accrued benefits is not warranted.

*William C. Hayes*, loc. no. 004561 at 3 (BVA Feb. 2, 1990). Apparently included in the evidence the BVA reviewed in coming to its decision (as listed in the "Evidence" section of the BVA decision) were the veteran's death certificate listing the esophageal cancer as a condition contributing to his death, and also

> a February 1988 letter, [reporting] that the veteran had adenocarcinoma of the esophagus and a paraesophageal abscess.

*Hayes*, loc. no. 004561 at 3. Dissatisfied with this decision, the appellant then perfected an appeal with this Court.

## II.

■ Congress has provided that a veteran's surviving spouse may receive "accrued benefits" consisting of up to one year of the veteran's due but unpaid benefits. 38 U.S.C. § 3021 (1988). In order to receive these benefits the spouse must show that the veteran had been entitled to the benefits either as the result of a prior BVA decision, or as the result of "evidence in the [veteran's claim] file at date of death...." *Id.* As the veteran in this appeal did not have a BVA rating decision entitling him to a 100% disability rating at the time of his death, it is this latter method of showing entitlement which the appellant must avail herself to in order to receive the benefits she seeks. In 38 C.F.R. § 3.1000(d)(4)(i) (1990), the VA clarifies what constitutes sufficient evidence to meet this latter method of showing entitlement to accrued benefits, stating that there must be

> evidence, including uncertified statements, which is essentially complete and of such weight as to establish service connection [for a compensable disease or injury,] or [an increase in the] degree of disability for [a previously service-connected] disease or injury when substantiated by other evidence in [the] file at date of death or when considered in connection with the identifying, verifying, or corroborative effect of the death certificate.

38 C.F.R. § 3.1000(d)(4)(i). Therefore, in order to receive the benefits the appellant seeks, she must show by the evidence in the file at the date of the veteran's death that the veteran had service-connected esophageal cancer for which he was entitled to a 100% disability rating.

■ In deciding whether the appellant has made this showing, 38 C.F.R. § 3.310(a) (1990) is of great importance. This VA regulation provides that:

> Disability which is proximately due to or the result of a service connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the sec-

ondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310(a). As a result of this regulation, if the appellant can show with the evidence in the veteran's file at the date of his death that the adenocarcinoma of the esophagus was proximately due to, or the result of, the veteran's service-connected disabilities, the adenocarcinoma is also service-connected.

The SOC issued in this claim suggests that the appellant may well have made this showing. As previously discussed, the SOC stated that on January 21, 1988, nearly one month before the veteran's death on February 20, 1988, the VA received medical evidence showing that the veteran was being treated for a "carcinoma of the esophagus which was felt to be the result of radiation treatment for the service-connected Hodgkin's disease." R. at 81. Read in light of 38 C.F.R. § 3.310(a), the receipt of this evidence by the VA before the veteran's death clearly makes a prima facie case that his adenocarcinoma of the esophagus was the result of his service-connected disabilities and therefore service-connected. The BVA, however, makes no mention of this evidence in its decision. *See Hayes,* loc. no. 004561 at 2–4.

Complicating this issue is the Court's uncertainty with regard to which document the SOC was referring to when it made this assertion. Although there are a number of documents in the record which could support this assertion, they all appear to have been received by the VA after the veteran's death. One of these documents, moreover, was apparently listed in the "Evidence" section of the BVA opinion as having been considered by the BVA in reaching its decision. The BVA discusses "a February 1988" letter in its decision, even though the only document dated February 1988 included in the record before this Court is a letter *dated* February 8, 1988, which is listed by the VA as having been *received* after the veteran's death. As a result we are unable to determine (a) which document the SOC was referring to, (b) whether the BVA was referring to the February 8, 1988, letter when it discussed "a February 1988" letter in its decision, (c)

whether the February 8, 1988, letter was received before or after the veteran's death, and (d) whether the BVA considered any evidence received after the veteran's death. Finally, if the BVA was referring to the February 8, 1988, letter presently in the record, this Court is also concerned by the BVA's failure to comment on the potentially determinative statement contained in that letter opining that the veteran's adenocarcinoma was caused by the radiation treatment the veteran received for his service-connected disabilities. See R. at 47, *Hayes*, loc. no. 004561 at 3–4.

### III.

Assuming that the SOC is accurate and the adenocarcinoma was service-connected, the only remaining issue to be resolved would be whether the existence of the cancer should have increased the veteran's overall disability rating. In rating disabilities of the digestive system, the VA has provided that "[n]ew [service-connected] growths, malignant, exclusive of skin growths," are to be rated as 100% disabling. 38 C.F.R. § 4.114, Diagnostic Code 7343 (1990). That the veteran had established with evidence in his file at his death that he was suffering from a new malignancy cannot be seriously questioned. The BVA, in both the "Evidence" and "Discussion and Evaluation" sections of its opinion, states that there was evidence in the veteran's file of a malignancy present at the date of his death. *Hayes*, loc. no. 004561 at 2–3. Moreover, the evidence in the veteran's file at the date of his death also shows that while the veteran suffered from numerous malignant growths during the course of his life, the emergence of the esophageal adenocarcinoma in 1987 was a new malignancy. Therefore, if service connection for the adenocarcinoma was established by the evidence in the veteran's file at the date of his death, then the veteran would have been entitled to the automatic 100% rating that diagnostic code 7343 provides for, and not the 70% he was receiving at the time.

### CONCLUSION

This Court has held that a BVA decision must be "clear enough to permit effective judicial review." *Gilbert v. Derwinski*, 1 Vet.App. 49, 56 (1990) (quoting *International Longshoreman's Assoc. v. National Mediation Board*, 870 F.2d 733, 735 (D.C.Cir.1989)). As demonstrated by the discussion above, the BVA decision in this appeal does not meet this standard. We therefore, pursuant to 38 U.S.C. §§ 4004(d)(1) and 4052(a) (1988), remand this matter to the BVA for redetermination and for an adequate statement of the reasons and bases supporting its decision.

*It is so Ordered.*