**Mildred M. HAYES, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1140.**

United States Court of Veterans Appeals.

March 11, 1993.

As Amended March 23, 1993.

Rick Surratt (non-attorney practitioner) was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Joan E. Moriarty were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

KRAMER, Associate Judge:

Appellant, Mildred M. Hayes, appeals a May 17, 1991, decision of the Board of Veterans' Appeals (BVA or Board) (the second BVA decision) denying entitlement to accrued benefits due her late husband, William C. Hayes, on the bases that neither the veteran nor persons empowered to act for him filed a claim for service connection for esophageal cancer, nor was there an increase in the veteran's service-connected disabilities during the year prior to his death. We vacate and remand the second BVA decision for additional factfinding.

## I. Background—The First BVA Decision

Appellant's late spouse was a World War II veteran with a long history of cancer and cancer-related medical problems dating back to the discovery of a tumor in his right upper mediastinum in 1944. By 1987, service connection had been established for the following disabilities: Hodgkin's disease ("a malignant condition characterized by painless, progressive enlargement of the lymph nodes, spleen, and general lymphoid tissue," DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 457 (27th ed. 1988)) with lobectomy of the upper lobe of the right lung

with rib resection and adenocarcinoma of the left breast rated as 60% disabling; the residuals of nitrogen mustard therapy with right lower extremity weakness rated as 10% disabling; X-ray burn scar (from radiation) of the lateral neck with limitation of motion, secondary to treatment for Hodgkin's disease, rated as 10% disabling; hypothyroidism, secondary to radiation therapy, rated as noncompensable; and status post squamous cell carcinoma of the neck rated as noncompensable. His combined disability rating as of June 1987 was 70%. R. at 20.

On June 3, 1987, the veteran choked on a piece of food which had lodged in his throat while he was eating. Although he was rescued with the Heimlich maneuver shortly after losing consciousness, the veteran continued to have trouble swallowing after that time. As a result, he subsequently underwent an examination of his swallowing process later that month which revealed a narrowing of the upper esophagus. The veteran's private physician, Dr. John Cook, III, then referred him to Dr. Thomas Gates, stating in his letter of referral, dated July 8, 1987, "This [area of narrowing of the esophagus] is right under an area of maximal radiation and the concern for development of squamous metaplasia/carcinoma is obvious." R. at 34. The veteran then underwent dilations of the esophagus in an attempt to improve his swallowing ability. These dilations, however, caused the veteran to have a substantial systemic reaction requiring medical treatment. R. at 43. From this point onward, the veteran's medical condition continued to worsen. On November 9, 1987, he filed an informal claim with the Veterans' Administration (now the Department of Veterans Affairs) (VA) for an increase in his disability rating. R. at 27. On January 21, 1988, a statement was sent to the VA stating that the veteran was totally disabled due to service-connected disabilities. Attached to this statement were documents confirming the information in this paragraph, including a copy of Dr. Cook's letter to Dr. Gates. The VA attempted to schedule a VA examination for the veteran, but he died, on February 20, 1988, before one

could be held. His death certificate listed the immediate cause of death as cardiac arrest due to coronary heart disease. R. at 44. It also listed "metastatic carcinoma arising in the mediastinum" as a "significant condition contributing to death." *Id.*

After the veteran's death, appellant filed a formal claim for accrued benefits with the VA on the grounds that the veteran's disability rating should have been 100% commencing with the onset of the esophageal cancer in June 1987. R. at 45. Included in the evidence received after death were reports from the University of Texas, M.D. Anderson Hospital and Tumor Institute (R. at 51–58), and Loudoun Memorial Hospital (R. at 70–74). Among other things, these reports indicated the presence of esophageal carcinoma. On December 5, 1988, the Roanoke, Virginia, VA Regional Office (RO) denied appellant's claim on the ground that there was insufficient evidence on file at the date of the veteran's death to establish entitlement to an increased disability rating. R. at 77. The RO also stated, however, in the Statement of the Case (SOC), dated February 15, 1989, that, on January 21, 1988, it had

> received medical evidence ... showing the veteran was treated for an esophageal stricture and carcinoma of the esophagus that was felt to be the result of radiation treatment for the service-connected Hodgkin's disease.

R. at 81. On May 8, 1989, a VARO rating decision on appeal confirmed the denial. R. at 87. Appellant then appealed to the BVA.

On February 2, 1990, the BVA, in the first BVA decision, denied appellant's claim, stating

> The evidence of record at the time of the veteran's death relates to the diagnosis and treatment for adenocarcinoma of the esophagus and a paraesophageal abscess. That evidence does not show that the veteran's service connected disorders had increased in severity during the year prior to his death; therefore, the Board finds that entitlement to accrued benefits is not warranted.

*Mildred M. Hayes*, BVA No. 90–02956, at 3 (Feb. 2, 1990). Apparently included in the evidence the BVA reviewed in coming to its decision (as listed in the "Evidence" section of the BVA decision) were the veteran's death certificate listing "metastatic carcinoma arising in the mediastinum" as a "significant condition contributing to death," and also "a February 1988 letter, [reporting] that the veteran had adenocarcinoma of the esophagus and a paraesophageal abscess." *Hayes*, BVA No. 90–02956, at 3. Dissatisfied with this decision, appellant then perfected an appeal with this Court, which resulted in our decision in *Hayes v. Derwinski*, 1 Vet.App. 186, 190, where, based on the SOC and the BVA statement, we concluded that appellant may have shown by evidence in file at date of death that the veteran had service connection for esophageal cancer ratable at 100% disability. *See* 38 C.F.R. § 3.310(a) (1992); 38 C.F.R. § 4.114, Diagnostic Code 7343 (1992). After reviewing the record, however, the Court was unable to ascertain to which medical evidence the SOC and the BVA statement were referring and when it had been received. As a consequence, the Court concluded that the BVA decision was not clear enough to permit effective judicial review and remanded the matter for consideration of the issues raised by the Court and for an adequate statement of the reasons or bases supporting its decision. *See Hayes*, 1 Vet.App. at 190.

## II. The Case Presently on Appeal— The Second BVA Decision

On May 17, 1991, the BVA issued a new decision (second BVA decision) which denied entitlement to accrued benefits on the bases that neither the veteran nor persons empowered to act for him filed a claim for service connection for esophageal cancer during the veteran's life, nor was there an increase in the veteran's service-connected disabilities during the year prior to his death. *Mildred M. Hayes*, BVA No. 91–16370, at 8–9 (May 17, 1991). Certain parts of the second BVA decision should be especially noted:

In this case, neither the veteran nor his representative filed a claim for service connection for esophageal carcinoma; therefore, a claim for accrued benefits based on service connection for that disorder cannot be granted....

....

In its March 1991 decision, the Court of Veterans Appeals also directed the Board to address several questions regarding the "February 1988 letter" referred to in the evidence portions of the [BVA] decision. Initially, the Board would point out that the letter, dated February 8, 1988, from John H. Cook III, M.D., was date stamped as received by the VA Regional Office in Roanoke, Virginia on March 9, 1988.... [N]either the March 9, 1988[,] material nor anything received after it was considered by the Board in its decision as the documents were not on file at the time of death.

It is also that letter from Dr. Cook, dated February 8, 1988, which was referred to in the February 1989 [SOC] on the issue of entitlement to accrued benefits and in the [BVA] decision; however, the [SOC] incorrectly reported that the letter was received on January 21, 1988.... However, this letter, although dated February 8, 1988, was not received by the VA until March 9, 1988. Since the veteran died on February 20, 1988, it is clear that Dr. Cook's February 8, 1988, letter was received after the veteran's death. While the Board referred to the February 8, 1988, letter in general terms in the evidence portion of its decision, it did not consider or otherwise comment on that evidence since it related to esophageal carcinoma, a disability that was neither service connected nor claimed service connected at the time of the veteran's demise.

*Id.*, at 5–7. Finally, the Board concluded that

even if one were to assume that a valid claim for service connection for esophageal carcinoma had been filed during the veteran's life, the claim for accrued benefits would nevertheless fail. A review of the evidence of record at the date of death reveals, at best, only a suspicion of active cancer. The death certificate

shows a carcinoma as playing a role in his demise; however, there was no evidence of record at time of his death showing that it was related to service or to a service connected disability.... [Section 5121, formerly] [s]ection 3021, Title 38, United States Code, which has been in effect for many years and which Congress has not chosen to alter, mandates that only the evidence on file at the time of the veteran's death be considered. Section 3.1000(d)(4)(i), Title 38, Code of Federal Regulations, *speaks of the mere fulfilling of ministerial duties such as certification of necessary documents. That regulation permits the filling in of missing details, not the building of the entire case.* To apply the regulation in any other way would be to permit the case to be made almost entirely after the veteran's death.

*Id.* at 8 (emphasis added). A timely appeal to this Court followed. The Secretary of Veterans Affairs (Secretary) filed a motion for remand, as discussed in part III.A., *infra.*

### III. The Issues Before the Court

#### A. *Validity of Claim*

■ Title 38, Code of Federal Regulations section 3.160(f) (1992) defines a claim for increase as "[a]ny application for an increase in the rate of a benefit being paid under a current award...." There can be no doubt that the collective submissions the veteran made in November 9, 1987, and January 21, 1988, met this definition. In *Akles v. Derwinski,* 1 Vet.App. 118, 120 (1991), this Court determined that "[t]here is no requirement in the law that a veteran must specify with precision the statutory provisions or the corresponding regulations under which he is seeking benefits." The veteran here was service connected for a number of malignant and related conditions. Whether the veteran's claim for the problems with his esophagus was cognizable under 38 C.F.R. § 3.303(b) (1992) as a subsequent manifestation of a service-connected condition or as a secondary condition under 38 C.F.R. § 3.310(a) (which provides for the secondary condition to be "a part of the original condition") is immaterial for purposes of filing a valid claim. For the BVA, in its second decision, to attempt to impose such technical pleading requirements as a basis for denying appellant's claim not only flies in the face of 38 C.F.R. § 3.160(f) and this Court's decision in *Akles,* but also violates 38 U.S.C.A. § 5107(a) (West 1991) (general duty to assist a veteran who submits a well-grounded claim). Moreover, such denial violates, as the Secretary himself acknowledges in his motion for remand, the scope of the Court's remand of the first BVA decision, 38 U.S.C.A. § 5103(a) (West 1991) ("the Secretary shall notify the claimant of the evidence necessary to complete the application" for benefits), and 38 C.F.R. § 3.155 (1992):

BVA, in this [second] decision, went beyond the scope of the remand ordered by the Court. Instead of providing a reasoned analysis of its previous decision, the Board proceeded to deny appellant's claim based on a reason not previously articulated in its 1990 decision, and not identified by the Court....

....

In addition to going beyond what the Court apparently contemplated as the purpose of its remand, BVA's 1991 determination [second BVA decision], that a claim for service connection for esophageal cancer was not filed, construes too strictly the requirements of an "informal claim." Section 3.155 of title 38 [C.F.R.], states that an informal claim is "[a]ny communication or action, indicating an intent to apply for one or more benefits...." (38 C.F.R. § 3.155). Here, at the time of his claim, the veteran's physicians were unable to establish a definitive diagnosis; however, it was known that the area of concern was "right under an area of maximal radiation" which the veteran had received for his service-connected Hodgkin's disease (R. at 34), and there was a concern that the area might be cancerous. (R. at 34, 43). As stated in appellant's brief, if VA determined that the form of appellant's claim was incorrect or insufficient, the proper course would have been for VA to inform

the veteran or his representative. [38 U.S.C.A.] § 5103(a). (Appellant's brief at 14). Additionally, as appellant points out, the regional office rating board in this same case previously accepted a claim for an increased rating as a claim for secondary service connection, without requiring this veteran to file a claim for service connection.

*Motion of Appellee,* at 3–4. As appellant has eloquently stated in her brief:

For VA to be aware that the veteran's claim was insufficient and to keep silent all the while it was pending in order to use that formality as a basis of denial, would not only be unconscionable, it would violate the fundamental principle underlying the ex parte nature of veterans' claims and the heightened duty of VA to assist veterans. Here, the BVA's decision necessarily has as its implicit premise the erroneous notion that (1) the veteran was required to specify that he was claiming a new service connection as opposed to increase, and (2) that VA has no duty to inform veterans when their claims are insufficient to obtain the benefits they seek. Otherwise, it is inescapable that the BVA would be openly suggesting that it be allowed to convert what would be VA's own illegal inaction or breach of duty to assist into a defense or bar against the widow's claim.

*Br. of Appellant,* at 14.

But there is also an even more fundamental flaw in the BVA's determination regarding denial of accrued benefits on the hypothesis that the veteran had not filed a valid claim during his life. The claim at issue here is *that filed by appellant,* not that filed by the veteran. Under 38 U.S.C.A. § 5121(c) (West 1991), the only requirement imposed regarding a claim for accrued benefits is that the application "must be filed within one year after the date of death." With respect to such requirement not being satisfied, the BVA wisely remained silent.

### B. Title 38, United States Code Annotated, section 5121(a) (West 1991) and the Regulations

Title 38, United States Code Annotated, section 5121(a) provides, as relevant here, that a veteran's surviving spouse may receive "accrued benefits" consisting of up to one year of due but unpaid benefits to which the veteran "was entitled ... based on evidence in the file at date of death." *See generally Conary v. Derwinski,* 3 Vet. App. 109, 115 (1992) (Steinberg, J., concurring) (section 5121(a) requirement that there be evidence in the file at date of death is one of the basic statutory eligibility requirements for accrued benefits claim). (*But see* part III.C., *infra*).

Title 38, Code of Federal Regulations, section 3.1000(d)(4)(i) (1992) further provides:

(4) *Evidence in the file at date of death* ... will be considered to have been met when there is on file at the date of the veteran's death:

(i) ... evidence, including uncertified statements, which is essentially complete and of such weight as to establish service connection [for a compensable disease or injury,] or [an increase in the] degree of disability for [a previously service-connected] disease or injury when substantiated by other evidence in file at date of death *or when considered in connection with the identifying, verifying, or corroborative effect of the death certificate.*

38 C.F.R. § 3.1000(d)(4)(i) (emphasis added and in original). Despite this language, the BVA, in its second decision states, curiously, that § 3.1000(d)(4)(i)

speaks of the mere fulfilling of ministerial duties such as certification of necessary documents. That regulation permits the filling in of missing details, not the building of the entire case. To apply the regulation in any other way would be to permit the case to be made almost entirely after the veteran's death.

*Hayes,* BVA No. 91–16370, at 8. Whatever redundancy and lack of clarity is contained in this regulation, what is clear is that § 3.1000(d)(4)(i), on its face, applies only to evidence in the file at date of death and the death certificate and, does not, by its terms, contemplate the submission of any

other post-death evidence. (We assume, for purposes of part III.B. analysis, that inclusion of the death certificate as evidence in the file at date of death does not exceed the scope of § 5121(a), a question made moot based on our analysis in part III.C., *infra*.)

Dr. Cook's letter, dated February 8, 1988, establishes a causal connection between the veteran's service-connected condition and esophageal cancer. *See* 38 C.F.R. § 3.310(a). However, as a consequence of the Court's remand of the first BVA decision and the resulting BVA decision now on appeal, we now know that this letter was received by the VA after death. Thus, under § 5121(a) and § 3.1000(d)(4)(i), if appellant is to prevail, she must do so without the benefit of this letter.

Close scrutiny of the evidence in the file at date of death reveals the following. Based on the undisputed facts, we know that the veteran was service-connected for the following: Hodgkin's disease with lobectomy of the upper lobe of the right lung with rib resection and adenocarcinoma of the left breast; X-ray burn scar (from radiation) of the lateral neck; hypothyroidism; and status post squamous cell carcinoma of the neck. There is *suspicion* of esophageal cancer related to appellant's radiation treatment. The only radiation treatment referenced in the record is for appellant's service-connected Hodgkin's disease. R. at 15–16. Finally, we know, from the death certificate, that a contributing cause of death was metastasis from the mediastinum. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 921 (27th ed. 1988), defines mediastinum as

> the mass of tissues and organs separating the two lungs, between the sternum in front and the vertebral column behind, and from the thoracic inlet above to the diaphragm below. It contains the heart and its large vessels, the trachea, esophagus, thymus, lymph nodes, and other structures and tissues. . . .

█ The issue thus becomes: did the BVA err by not finding esophageal cancer to be present based on the evidence described in the preceding paragraph. What we do not know, for certain, at date of

death, is from which organ or tissue in the mediastinum, the cancer contributing to death came. While it is quite possible that it came from *suspected* esophageal cancer, alternatively, it may have come from one of the service-connected organs (the lung, ribs, breast, thyroid, and neck), or it may have come from somewhere else (a non-service-connected organ) in the mediastinum. The BVA simply could not determine with exactitude where the cancer referenced in the death certificate arose. In this regard, and as previously quoted in part II., *supra*, the BVA stated:

> A review of the evidence of record at the date of death reveals, at best, only a suspicion of active cancer. The death certificate shows a carcinoma as playing a role in his demise; however, there was no evidence of record at time of his death showing that it was related to service or to a service connected disability.

*Mildred M. Hayes*, BVA No. 91–___, at 8. Based on the date-of-death-evidence of record, which shows only suspected esophageal cancer, we cannot conclude that this determination is implausible and therefore, it cannot be deemed clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990).

One final regulatory provision needs to be considered. Appellant argues, in essence, that 38 C.F.R. § 3.1000(d)(4)(ii) permits consideration of evidence "affecting entitlement" not in the file at date of death. *Br. of Appellant*, at 19–22. While not a model of clarity, the language of the regulation applies only to cases involving reductions in accrued benefits as a result of hospital treatment, or institutional or domiciliary care by the VA and claims for increases in accrued benefits as a result of the existence of dependents. Neither situation is present in this case. Whatever difficulties the Court may encounter in coming to grips with this regulation in the future, the Court does not have to consider it in this case.

### C. *Title 38, United States Code Annotated, section 5121(c) and the Manual provisions*

In our prior decision in *Hayes*, 1 Vet. App. at 188, we stated that it was unneces-

sary to determine whether 38 U.S.C.A. § 5121 (1988) mandated or precluded the consideration of evidence received after death. Because of our holdings in parts III.A. and III.B., *supra*, this issue must now be addressed.

■ While 38 U.S.C.A. § 5121(a) permits only evidence in the file at date of death, 38 U.S.C.A. § 5121(c) appears to contradict, or at least qualify, that provision by stating, "If a claimant's application is incomplete at the time it is originally submitted, the Secretary shall notify the claimant of the evidence necessary to complete the application" within one year from the date of such notification. In this regard, the legislative history is silent regarding congressional intent. *See* Veterans Benefits Act of September 2, 1958, Pub.L. No. 85–857, § 3021, 72 Stat. 1228. Given this ambiguity, the Secretary has wide latitude in establishing departmental policy as to what post-date-of-death evidence may be considered. *See N.L.R.B. v. United Food & Commercial Workers Union*, 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (when the relevant statute is ambiguous, the agency's interpretation will generally be sustained as long as it reflects a permissible construction of the statute).

However, the regulatory framework that has been established to implement § 5121(a), (c) is confusing at best. We have already discussed, in part III.B., 38 C.F.R. § 3.1000(d)(4)(i). In sum, the only post-death evidence literally permitted by this provision is the death certificate. Yet, as referenced in part II., *supra*, the BVA stated that this provision allows more than just the death certificate, permitting the "fulfilling of ministerial duties such as certification of necessary documents ... [and] the filling in of missing details." Superimposed on this regulation and the BVA's interpretation of it, is a confusing array of provisions of the VA Manual, M21–1 (Manual), scattered amongst two chapters, regarding what post-date-of-death evidence is acceptable. *See* VA Manual, M21–1,

¶¶ 5.25, 27.08. To the extent that these Manual provisions affect what post-date-of-death evidence may be considered, they have " 'the force of law' ... [as they affect] a substantive right [of appellant to accrued benefits,] and ... placement in a procedural manual cannot disguise [the] true nature [of these provisions] as ... substantive rule[s]." *Fugere v. Derwinski*, 1 Vet.App. 103, 107 (1990) (citations omitted).

VA Manual, M21–1, ¶ 5.25(a) permits certain government documents to be considered as being in the file at date of death even though actually put into the file post date of death:

a. Evidence in File at Date of Death. Evidence "in file" includes the following, even if such reports are not reduced to writing or are not physically placed in file until after death:

(1) Service Department records;

(2) Reports of VA hospitalization;

(3) Reports of treatment of examinations in VA medical centers including those in outpatient treatment folders;

(4) Reports of hospitalization, treatment or examinations authorized by VA; and

(5) Reports of autopsy made by VA on the date of death.

In addition, VA Manual, M21–1, ¶ 5.25(b) states, in relevant part, that "[t]he cited regulations [38 C.F.R. § 3.1000(d)(4) and § 3.327(b)(1) (1992)] also provide for the acceptance of evidence after death for verifying or corroborating evidence 'in file' at death." The exceptions called for by ¶ 5.25(a), (b) are not set forth in either § 3.1000(d)(4) or the second BVA decision, as already discussed in part III.B.

Title 38, C.F.R. § 3.327(b)(1) deals with scheduling a reexamination in a compensation case and provides that

any *hospital report* and any *examination report* from a military hospital or from a State, county, municipal or other government hospital or *recognized private institution* which contain descriptions, including diagnoses and clinical and laboratory findings, adequate for rating purposes, of the condition of the

organs or body systems for which claim is made *may be deemed to be included in the term "Department of Veterans Affairs examination."* 38 C.F.R. § 3.327(b)(1) (emphasis added). The hospital reports from the University of Texas and Loudoun Memorial submitted after death clearly fall within the scope of § 3.327(b)(1) and thus, if so "deemed," within the scope of ¶ 5.25(b). Moreover, because these documents may now qualify as VA examinations, they may also fall within the scope of ¶ 5.25(a)(2), (a)(3). Thus taken together, these Manual and Code of Federal Regulations provisions may require that these reports, even though submitted after death, nevertheless, be considered.

 With consideration of these hospital reports, the evidence of record would show that what was at first reported as a suspicion of esophageal cancer related to an area of maximal radiation has indeed been confirmed as such cancer. In addition, the evidence of record shows that the only radiation received was for treatment of a service-connected condition.

No determination has yet been made as to whether these reports are to be deemed to be VA examinations. If so deemed, the BVA must then factually determine whether this additional evidence is sufficient, when taken together with the evidence described in part III.B., *supra,* to show entitlement to service connection for esophageal cancer pursuant to § 3.310 or § 3.303. This case must be remanded to the BVA for such purposes. Of course, such determinations are to be accompanied by a full statement of reasons or bases and, in regard to any factfinding, a thorough analysis of the benefit of the doubt doctrine. *See Gilbert,* 1 Vet.App. at 53–59.

Because of the result reached here, we do not reach the issues of whether Dr. Cook's letter of February 8, 1988, must also be permitted either as "verifying or corroborating evidence 'in file' at date of death," Manual, ¶ 5.25(b), or on the basis that "a claimant may confirm the prima facie evidence in file at the date of death by submitting evidence in connection with the claim for accrued benefits." Manual, ¶ 27.-08(b). However, in the event that the BVA's factfinding on remand results in a determination adverse to appellant, the BVA shall also adjudicate appellant's claim pursuant to these Manual provisions. In such instance, the BVA should clarify the meaning to be imputed to these provisions. In addition, the VA, at the earliest possible opportunity, may wish to clarify its policy as to what evidence submitted after death may be considered.

## IV. CONCLUSION

The BVA decision is REVERSED as to its determination that no valid claim has been filed for accrued benefits, AFFIRMED insofar as it inferentially may have concluded that there was insufficient evidence in the file at date of death under 38 U.S.C.A. § 5121(a) and 38 C.F.R. § 3.1000(d)(4)(i) to award accrued benefits, and otherwise VACATED and REMANDED for proceedings consistent with this opinion.