*109 HOLD AWAY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a concurring opinion.
HOLDAWAY, Judge:
The appellant, Georgia D. Ralston, appeals a December 1997 decision of the Board of Veterans’ Appeals (BVA or Board) which denied her claim for accrued benefits for a special monthly compensation for aid and attendance and housebound benefits. On July 2, 1999, this Court issued a memorandum decision which vacated the Board’s decision and remanded the matter to the Board. On August 3, 1999, the appellant filed a timely motion for reconsideration. On August 6, 1999, the Secretary filed a motion for clarification of remand order which requests that the Court reconsider its July 2, 1999 memorandum decision. On September 7, 1999, the Court granted the motions of both parties and withdrew its July 1999 memorandum decision. This opinion is issued in its stead. For the following reasons, the Court will vacate the Board’s decision and remand the matter for further proceedings.
I. FACTS
The veteran, Deiva D. Ralston, served in the U.S. Navy from May 1942 to September 1945. During military service, the veteran suffered from headaches, nervousness, and insomnia. He was diagnosed with “operational fatigue” and granted a medical discharge. After his discharge, a VA regional office (VARO) awarded a 50% disability rating for “psychoneurosis, situational, severe.” Over the years, the veteran’s condition gradually became more severe and in September 1982, a VARO awarded a 100% disability rating for “schizophrenic reaction, paranoid type, chronic.”
In April 1988, Dr. Mary Hudson examined the veteran. Dr. Hudson determined that the veteran’s mental disorder rendered him emotionally unstable and “more dependent on others.” Dr. Hudson did not state to what extent the veteran was dependent on others. The VARO treated this medical report as a claim for a special monthly compensation and denied this claim. The veteran then filed a timely Notice of Disagreement (NOD). In his NOD, the veteran stated:
My wife has to put my medicine out of five different ones, twice a day and I forget to take them unless she reminds me. My wife has to watch me take the medicine to insure [sic] that I really take them. My wife has to help me put my clothes on and button them. My wife has to help me bath[e]. I cannot prepare meals for myself because of my lack of being able to remember that I have things on the stove or oven. I recently had a fire in the kitchen in hot oil where I was trying to fry chicken. I burnt up the frying pan and the chicken and only had a smoke filled kitchen because someone came in and saved my home from a major disaster from fire.
In December 1988, the veteran filed his substantive appeal in which he stated:
I am functionally unable to perform many tasks for myself due to the severity of my service[~]connected disabilities. I require assistance in dressing [and] bathing. I am unable to cook for myself, as I almost burned down my home. My wife stays with me constantly, and I require her to be with me when I go outside. I do not drive.
In July 1989, the Board remanded the veteran’s claim to the VARO to obtain the veteran’s outpatient treatment reports from the local VA medical center and to obtain a special psychiatric examination to determine whether or not the veteran required aid and attendance. The Board explicitly stated that the veteran’s claims file should be made available for review by the examiner prior to the examination. The VARO then obtained the veteran’s outpatient treatment reports dated from July 1989 which indicated that he was receiving treatment for a cerebrovascular accident, commonly referred to as a *110 stroke. These reports indicated that the veteran had not been responding well to rehabilitation following the stroke. They stated that the stroke rendered the veteran unable to speak and that he had to communicate by shaking his head. They noted that he had been living in a nursing home but he had been eating without assistance.
In October 1989, VA furnished the veteran with a psychiatric examination performed by Dr. A. Unger. In his report, Dr. Unger stated:
The patient was brought to the examining room in a wheelchair. He is a pleasant, smiling, somewhat obese individual who has his left upper extremity in a sling. He doesn’t know his age or his Social Security Number, is unable to communicate verbally, and merely nods or shakes his head in response to questions. In this way, it is learned that he had a cerebrovascular accident. He is unable to indicate when, and otherwise unable to give any history or any list of current complaints.
Dr. Unger concluded that the veteran was incompetent to handle his own funds but did not explicitly state whether or not the veteran required aid and attendance. Dr. Unger did not indicate whether the veteran’s claims file was made available for review.
Later that month, VA provided the veteran with the required special psychiatric examination to determine whether the veteran required aid and attendance. Dr. J. Ceppos performed this examination and stated in his report that:
This examination was markedly limited for lack of history, due to the fact that the veteran had no one with him and he is unable to speak. He is undergoing speech pathology at the Nursing Home, so that all of the examination is affected by this.
Veteran cannot grip with the right hand, can not move the right leg. He can grip with the left hand. He can not feed himself, shave[,] or tend to needs of nature.
Dr. Ceppos also noted that the veteran was confined to a wheelchair.
In November 1989, the VARO denied the veteran’s claim on the basis that his status was not the result of his service-connected condition but rather his non-service-connected stroke. The appellant then filed an appeal to the Board. In October 1992, the veteran submitted a statement which related that he was paying attendants to assist him five times per week. He also submitted another statement from Dr. Hudson who opined that the veteran’s “service-related condition caused or is partially responsible for the condition requiring the electric lift, aid[,] and attendants.” In February 1993, Dr. Hudson wrote another letter which stated:
This veteran remains severely disabled due to his paranoid schizophrenia. This condition has been exacerbated by his expressive aphasia and right-sided paralysis secondary to his cerebrovascular accident. Frustration, crying, insomnia, agitation, sudden yelling out[,] and difficulty in handling are a side effect of his schizophrenia and not his stroke.
It is my opinion that he needs full compensation with aid and attendance for this service-connected disability.
Before the Board could decide his appeal, the veteran died in January 1994 from cerebral vascular accidents with “right-sided paralysis expressive aphasia.” The death certificate also listed hypertension, a seizure disorder, schizophrenia, depression, anxiety, and osteoarthritis as underlying causes or significant conditions contributing to his death. Later that month, the appellant, as the veteran’s surviving spouse, filed a claim for dependency and indemnity compensation (DIC) and accrued benefits. In March 1994, the VARO determined that the veteran’s death was not service connected but awarded DIC on the basis that the veteran had been totally disabled for more than ten years prior to his death.
*111 In June 1994, the appellant wrote a letter to VA requesting to know the status of the appellant’s claim for aid and attendance. The VARO treated this letter as a claim for accrued benefits. In January-1996, the VARO denied her claim for accrued benefits on the grounds that the veteran had not required aid and attendance solely due to his service-connected condition. The appellant then filed an appeal to the Board. In support of her appeal, she submitted another letter from Dr. Hudson which stated, “This patient’s mental condition was such that for years his wife had to be his care giver. She gave him his medicine, saw to it that he was properly dressed, and attended to his bodily needs.” In April 1996, Dr. Hudson wrote another letter which stated:
[The veteran] sustained head trauma and shell shock in 1943. Subsequently he suffered from seizures superimposed on paranoid schizophrenia. He needed regular aid and attendance due to his mental incapacity since he was in danger from his environment and from himself. He was unable to function on his own and required constant care.
On appeal, the Board denied the appellant’s claim for accrued benefits based on her husband’s claim for aid and attendance. The Board stated, “Although the veteran’s schizophrenic manifestations often caused his periodic refusal to cooperate in his own daily care, no evidence has been presented that he was actually unable to undertake his own care solely as a result of this mental disorder.” The Board found that “the overwhelming weight of the evidence also attributes this situation to the residual manifestations of the veteran’s 1989 [stroke].” The Board did not discuss Dr. Hudson’s opinion that the veteran’s stroke may have been connected to his service-connected mental condition.
On appeal to this Court, the Secretary conceded that a remand was in order because the Board had failed to give adequate reasons and bases for its decision. On July 2, 1999, the Court issued a memorandum decision which remanded the matter. After reviewing the evidence, the Court granted the Secretary’s motion and remanded the matter back to the Board to fulfill its statutory obligation to provide adequate reasons and bases for its decision. See 38 U.S.C. § 7104(d)(1); Gilbert v. Derwinski, 1 Vet.App. 49 (1990). The Court also ordered the Board to secure a medical opinion to address the fundamental issue in this case — whether or not the veteran had required regular aid and attendance and was housebound on account of his service-connected condition.
II. ANALYSIS
Accrued benefits are defined as “periodic monetary benefits ... to which an individual was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death.” 38 U.S.C. § 5121(a). These periodic benefits owed to an individual at the time of death are then paid to that individual’s spouse, children, or parents. Id. A claimant seeking payment under this section may receive up to two years’ worth of “due and unpaid” periodic benefits. Id.
Aid and attendance compensation is among those periodic benefits contemplated by this statute. Aid and attendance compensation is an additional monthly compensation for those veterans who are so disabled that they need regular aid and attendance. 38 C.F.R. § 3.350. In order to qualify for this additional compensation, the claimant must meet the parameters set forth by regulation. See 38 C.F.R. § 3.352. This regulation provides:
The following will be accorded consideration in determining the need for regular aid and attendance (§ 3.351(c)(3)[) ]: inability of claimant to dress or undress himself (herself), or to keep himself (herself) ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid (this will not include the adjustment of *112 appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.); inability of claimant to feed himself (herself) through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his or her daily environment. It is not required that all of the disabling conditions enumerated in this paragraph be found to exist before a favorable rating may be made. The particular personal functions which the veteran is unable to perform should be considered in connection with his or her condition as a whole. It is only necessary that the evidence establish that the veteran is so helpless as to need regular aid and attendance, not that there be a constant need. Determinations that the veteran is so helpless, as to be in need of regular aid and attendance will be based solely upon an opinion that the claimant’s condition is such as would require him or her to be in bed. They must be based on actual requirement of personal assistance from others.

Id.

In addition, a veteran may also receive a special monthly compensation for housebound status. See 38 C.F.R. § 3.350(i). This regulation provides for the additional compensation if the veteran has a service-connected disability rated at 100% disabling and “[h]as additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems” or “[i]s permanently housebound by reason of service-connected disability or disabilities.” Id. Permanently housebound is defined as “substantially confined as a direct result of service-connected disabilities to his or her dwelling and the immediate premises or, if institutionalized, to the ward or clinical areas, and it is reasonably certain that the disability or disabilities and resultant confinement will continue throughout his or her lifetime.” 38 C.F.R. § 3.350(i)(2).
In his motion for reconsideration, the appellant reiterated her request that the Court reverse the Board’s decision because all of the evidence of record supports the appellant’s claim that the veteran was entitled to aid and attendance and housebound compensation. The appellant also noted that the Court failed to address the issue of the appellant’s claim for accrued benefits based on the veteran’s entitlement to a special monthly compensation for housebound status. In his motion for clarification, the Secretary again concedes that a remand is necessary in this case because the Board failed in its duty to provide adequate reasons and bases in addressing Dr. Hudson’s opinions regarding the veteran’s need for aid and attendance.
Regarding the appellant’s motion, the Court recognizes that it did not discuss the issue of a special monthly compensation for housebound status. This does not mean that the Court did not consider the issue. After reviewing the record on appeal for a second time, the Court remains convinced that the record on appeal indicates that for some time before his death, the veteran required aid and attendance and was housebound. The issue continues to be whether these needs were caused by his service-connected mental condition. The evidence of record indicates that the veteran did not require aid and attendance and was housebound until about the time he suffered from his stroke. Dr. Unger and Dr. Ceppos both seemed to indicate that the veteran was incompetent as a result of his stroke. However, neither Dr. Unger nor Dr. Ceppos appeared to have the veteran’s medical records available for review nor did they discuss the issue of housebound status.
Dr. Hudson, meanwhile, opined that she believed that the veteran should be awarded aid and attendance on account of his *113 mental disorder. On another occasion, she stated that the veteran required aid and attendance on account of the symptoms of his mental condition, such as “frustration, crying, insomnia, agitation, sudden yelling out[,] and difficulty in handling,” yet none of these symptoms warrant aid and attendance pursuant to 38 C.F.R. § 3.352. Another statement suggested that the veteran had needed aid and attendance since his discharge from service, but that contention is not supported by the evidence of record. She also implied that the veteran’s service-connected mental disorder may have caused his stroke but she never explained this opinion. The Court is thus left uncertain as to the basis for her conclusions that the veteran required aid and attendance for his service-connected mental condition. Dr. Hudson also did not discuss the issue of the veteran’s housebound status.
In his motion for clarification, the Secretary correctly states that entitlement to accrued benefits must be determined based on evidence that was either physically or constructively in the veteran’s file at the time of his death. See 38 U.S.C. § 5121(a); Hayes v. Brown, 4 Vet.App. 353 (1993) (certain records deemed to be in file at time of death). The Secretary then argues that this statute prohibits the Board from securing additional evidence as the Court had ordered in its memorandum decision. The Secretary essentially requests that, notwithstanding the inadequacy of the record, the Court reconsider its decision and remand the matter to the Board without ordering it to secure a medical opinion.
After reviewing the evidence, the Court will accept the Secretary’s concession that a remand is appropriate for the Board to provide adequate reasons and bases for its decision without securing a medical opinion. See Hayes, supra. The Secretary conceded that the Board’s decision was deficient because it: (1) relied upon Dr. Unger’s October 1989 examination report when he had not reviewed the veteran’s claim file; (2) failed to account for or provide probative value of Dr. Hudson’s statements; and (3) failed to support with the evidence of record its finding that “the allegations of the appellant and the observations provided by Dr. Hudson are far outweighed by the evidence indicating that the veteran’s need for aid and attendance, and his housebound status, were attributable to his non-service-connected [disability].” The Court finds that a reversal is not warranted because all of the evidence of record is not in favor of the appellant. See James v. Brown, 7 Vet.App. 495 (1995). Furthermore, the Board is required to discuss each of the criteria found in 38 C.F.R. § 3.352 to determine if the veteran met the requirements for aid and attendance and housebound or “permanently bedridden” benefits.
III. CONCLUSION
After consideration of the pleadings and a review of the record, the decision of the Board is VACATED and the matter is REMANDED to the Board for further adjudication.