# United States Court of Appeals for the Federal Circuit

2008-7163

PAUL W. HYATT,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Sandra W. Wischow, Goodman, Allen & Filetti, of Richmond, Virginia, argued for claimant-appellant.

Claudia Burke, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and Martie S. Adelman, Attorney, United States, Office of the General Counsel, Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Per Curiam

# United States Court of Appeals for the Federal Circuit

2008-7163

PAUL W. HYATT,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 04-0957, Per Curiam.

_____

DECIDED:  May 27, 2009

_____

Before LOURIE, GAJARSA, and PROST, Circuit Judges.

PROST, Circuit Judge.

Mrs. Julianne Hyatt is the widow of Mr. Paul Hyatt, a veteran who died on August 24, 2007, while his claim for disability compensation was pending.  On July 22, 2008, the United States Court of Appeals for Veterans Claims ("Veterans Court") issued an order denying two motions filed by Mrs. Hyatt.  The first motion requested that the court substitute her as a party in Mr. Hyatt's case.  The second asked the court to give nunc pro tunc effect to the Veterans Court's decision on an appeal taken by Mr. Hyatt for which a decision was issued but judgment was not yet entered prior to his death.  Because we conclude that Mrs. Hyatt lacks standing to be substituted as a party, we affirm the Veterans Court's disposition of both motions.

## I. BACKGROUND

Mr. Hyatt served in the United States Marine Corps from December 1958 to September 1962. In 1959, Mr. Hyatt was injured when a member of his military unit negligently struck him in the back with a bayonet during a ceremony at the Tomb of the Unknowns at Arlington National Cemetery. The serviceman responsible for Mr. Hyatt's injury was disciplined by court martial.

In 1983, Mr. Hyatt filed a claim for disability compensation for a lower-back condition, which he alleged resulted from the 1959 bayonet injury. Along with his application, Mr. Hyatt submitted lay statements describing the circumstances surrounding the bayonet incident. The statements disclosed that the serviceman had been court-martialed, but the court martial records were not submitted and the Department of Veterans Affairs ("VA") did not attempt to acquire them. In December 1983, a VA regional office denied his claim and Mr. Hyatt did not appeal.

In 1998, the VA reopened Mr. Hyatt's case in response to newly submitted evidence. After his claim was again denied, Mr. Hyatt suggested that the Board of Veterans' Appeals ("Board") retrieve the court martial records. The Board declined to do so. Although the Board found that the 1959 bayonet incident had occurred and that Mr. Hyatt currently suffered from a back disability, it also found that a nexus between the two had not been established because there was "no medical, or consistent lay evidence, of the nature and extent of [the bayonet] wound." Accordingly, the Board denied his claim for service connection.

On appeal to the Veterans Court, Mr. Hyatt argued that the VA had failed to satisfy its statutory duty to assist him in obtaining the evidence and information

necessary to substantiate his claim. On August 6, 2007, the Veterans Court issued its decision, which reversed the Board's finding that the duty to assist had been satisfied and remanded for further proceedings. The Veterans Court noted the relevance of the court martial records:

> In significant part, the Board rested its decision that there was no nexus between Mr. Hyatt's current disability and his injury in service on its finding that there was "no medical, or consistent lay evidence, of the <u>nature and extent</u> of" the wound to Mr. Hyatt's back that he suffered in service. Those dealing with veterans' claims should understand that a court-martial involving an injury to another serviceman likely would contain evidence regarding the extent and nature of the injury for purposes of aggravation and mitigation.

<u>Hyatt v. Nicholson</u>, 21 Vet. App. 390, 395 (2007) (citation omitted). Because the court martial records were relevant and had been identified to the VA, the Veterans Court found that the VA "had a duty to attempt to secure the court-martial records and, if unsuccessful in doing so, to provide Mr. Hyatt with the specific notice required by section 5103A(a)(2)." <u>Id.</u> The Veterans Court entered its judgment on August 29, 2007. However, it was later notified that Mr. Hyatt had died on August 24, 2007.

Mrs. Hyatt filed motions requesting substitution of party and reissuance of the judgment nunc pro tunc as of the date of Mr. Hyatt's death. Mrs. Hyatt hoped that these motions, if successful, would result in the court martial records being treated as part of Mr. Hyatt's file at his date of death, thereby making them available for Mrs. Hyatt's claim for accrued benefits under 38 U.S.C. § 5121. In a July 22, 2008 order, the majority of the Veterans Court, over a dissent, determined that Mrs. Hyatt did not have standing to be substituted as a party and thus could not seek reissuance of the judgment. <u>Hyatt v. Peake</u>, 22 Vet. App. 211 (2008). Accordingly, it withdrew the decision on Mr. Hyatt's appeal and vacated the Board decision with respect to the matters upon which Mr.

2008-7163                                        3

Hyatt's appeal was based. Id. at 215. Mrs. Hyatt timely appealed. We have jurisdiction under 38 U.S.C. § 7292.

## II. DISCUSSION

On an appeal from the Veterans Court, this court "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). "Our review is limited to questions of law, and it is de novo." Bailey v. West, 160 F.3d 1360, 1362 (Fed. Cir. 1998) (en banc) (citations omitted).

"[A] veteran's claim to disability compensation . . . is terminated by his or her death . . . ." Richard v. West, 161 F.3d 719, 723 (Fed. Cir. 1998). However, 38 U.S.C. § 5121(a) provides that specified individuals, including a surviving spouse, may receive the "benefits . . . to which [the veteran] was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death . . . and due and unpaid." Thus, under the statute, "the [§ 5121] claimant takes the veteran's claims as they stand on the date of death." Zevalkink v. Brown, 102 F.3d 1236, 1242 (Fed. Cir. 1996). Although an accrued benefits claim brought by a surviving spouse under § 5121 is "derivative of the veteran's claim for service connection," it is nevertheless a separate claim based on a separate statutory entitlement to benefits. Id. at 1241. Additionally, it comes with a separate set of administrative and appellate procedures. Id. at 1243-44. Because an accrued benefits claim is a separate claim with separate procedures that begins where the veteran's claim stood at the date of death, the claimant will often be able to pursue her claim without any need to be substituted as a party in the veteran's case. See id. at 1244.

For cases in which the accrued benefits claimant requests substitution, this court has identified a two-part inquiry for deciding if substitution is proper.[1] Padgett v. Nicholson, 473 F.3d 1364, 1370 (Fed. Cir. 2007). First, although the Veterans Court is not bound by Article III of the Constitution, it nevertheless requires the claimant to show the presence of a "case or controversy." Id. Second, the claimant "must satisfy the Veterans Court's standing requirement under 38 U.S.C. § 7266(a), which provides that she be 'adversely affected' by a decision of the [B]oard." Id.

In this case, Mrs. Hyatt seeks to be substituted as a party in Mr. Hyatt's case and to have judgment reissued nunc pro tunc so that she can benefit from the Veterans Court's decision finding a violation of the duty to assist and remanding for the VA to attempt to obtain the court martial records. The majority of the Veterans Court relied on what appear to be two separate grounds to support its conclusion that Mrs. Hyatt lacks standing for substitution. First, it found that substitution was inappropriate because the result of Mr. Hyatt's appeal lacked the type of "continuing relevance" to Mrs. Hyatt's accrued benefits claim that is required by this court's precedent. Specifically, it concluded that the "continuing relevance" requirement was only met in cases in which

---

[1] As part of the Veterans' Benefits Improvement Act of 2008, Congress created a new statutory section that addresses substitution. The new provision, codified at 38 U.S.C. § 5121A(a)(1), provides:

> If a claimant dies while a claim for any benefit under a law administered by the Secretary, or an appeal of a decision with respect to such a claim, is pending, a living person who would be eligible to receive accrued benefits due to the claimant under section 5121(a) of this title may, not later than one year after the date of the death of such claimant, file a request to be substituted as the claimant for the purposes of processing the claim to completion.

However, this provision applies only in cases in which the veteran died after October 10, 2008. Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, 122 Stat. 4145, 4151. Because Mr. Hyatt died in August 2007, it is inapplicable in this case.

the judgment sought to be reissued would result in an imminent entitlement to benefits. Second, it found that Mrs. Hyatt would not be "adversely affected" if the result in Mr. Hyatt's appeal was vacated because even if the decision was to be reissued nunc pro tunc, the court martial records would not be part of the record for Mrs. Hyatt's accrued benefits claim. On appeal, Mrs. Hyatt argues that neither ground is correct.

A

The first ground of the Veterans Court's decision rests on its interpretation of our decisions in Padgett and Pelea v. Nicholson, 497 F.3d 1290 (Fed. Cir. 2007). According to Mrs. Hyatt, the Veterans Court improperly relied on Pelea to justify an incorrect interpretation of the rule set forth in Padgett. The government responds that Padgett is distinguishable and Pelea governs the result in this case.

In Padgett, this court addressed a situation in which the Veterans Court, unaware that Mr. Padgett was no longer living, issued a decision that, among other things, reversed a finding by the Board that Mr. Padgett's injury was not service connected. 473 F.3d at 1366-67. By reversing the Board's finding on service connection, the Veterans Court created in Mr. Padgett an entitlement to at least some benefits. Mr. Padgett's surviving spouse, Mrs. Padgett, sought to be substituted. Id. The Veterans Court denied Mrs. Padgett's motion. On appeal, this court reversed, finding that Mrs. Padgett had standing because "but for the nunc pro tunc relief, [the Board's decision, which was reversed by the Veterans Court] would adversely affect her claim in the same way it adversely impacted Padgett's claim at the time he filed his notice of appeal." Id. at 1370.

In Pelea, Mrs. Pelea, the surviving spouse of a veteran, died while pursuing her claim for dependency and indemnity compensation. 497 F.3d at 1291-92. Shortly before her death, the Veterans Court vacated a Board decision denying benefits and remanded for determination of whether the VA had properly notified Mrs. Pelea of the evidence necessary to support her claim. Id. at 1292. After her death, her estate moved to be substituted as a party. Id. The Veterans Court denied the motion and her estate appealed. Id. This court affirmed, finding that there was no legal basis for Mrs. Pelea's estate to "continue to press her claim for a benefit she sought but had not yet been awarded before she died." Id. Additionally, the court rejected Mrs. Pelea's reliance on Padgett because while the decision reissued nunc pro tunc in Padgett established Mr. Padgett's entitlement to benefits prior to his death, the Veterans Court's decision vacating the Board's denial of benefits in Mrs. Pelea's case

> would not entitle [Mrs. Pelea] to any accrued benefits. The Veterans Court held only that the Board should further consider whether the VA had adequately informed her what additional evidence she should submit to support her claim. Under that ruling, she still was a long way from establishing either that her deceased husband had served in the United States military or that his death was connected with such service.

Id. at 1293.

In Mrs. Hyatt's case, the majority of the Veterans Court distinguished Padgett as involving a "very different posture" than that of Mrs. Hyatt's case. Hyatt v. Peake, 22 Vet. App. at 213. In its view, Mrs. Hyatt's case was not sufficiently analogous to the situation in Padgett because Padgett involved a Veterans Court decision that "effectively granted benefits to Mr. Padgett before his death" while the decision that Mrs. Hyatt seeks to have reissued merely remands Mr. Hyatt's case for further development. Id. at 213-14. Instead, the majority viewed Mrs. Hyatt's position as similar to that of the

surviving spouse's estate in <u>Pelea</u> because she "still was a long way from establishing" entitlement to benefits.  <u>Id.</u> at 214.  Thus, the majority of the Veterans Court read the combination of <u>Padgett</u> and <u>Pelea</u> to stand for the proposition that an "imminent grant of entitlement to service connection" was required for substitution to be proper.  <u>Id.</u> at 213-14.  In dissent, Judge Kasold expressed his opinion that the majority's reliance on <u>Pelea</u> was misplaced.  <u>Id.</u> at 216 (Kasold, J., dissenting).  In his view, the inquiry is not whether there will be an imminent grant of benefits, but whether Mrs. Hyatt is able to show a "personal stake" in having the Veterans Court's judgment in Mr. Hyatt's case reissued nunc pro tunc.  <u>Id.</u> at 216 n.1.  If so, he stated, substitution is proper.  <u>Id.</u>

We agree with the dissent that the question of whether Mrs. Hyatt may be substituted as a party in Mr. Hyatt's case is not fully resolved by the fact that the Veterans Court decision at issue did not decide the ultimate issue of entitlement to benefits.  While it is of course true that <u>Padgett</u> involved such a factual scenario, we see no such requirement in the court's reasoning.  Rather, in a case such as this where an accrued benefits claimant is seeking to be substituted for the purpose of requesting that a decision be reissued nunc pro tunc, <u>Padgett</u> only requires that the decision have "continuing relevance" such that, but for the nunc pro tunc relief, the accrued benefits claim would be adversely affected.  473 F.3d at 1370.  Thus, the accrued benefits claimant need only show that the failure to reissue the decision nunc pro tunc will adversely affect her claim in some way.

The rule in <u>Padgett</u> was not changed by <u>Pelea</u>.  The portion of <u>Pelea</u> cited by the Veterans Court serves only to describe why Mrs. Pelea's estate could gain nothing by being substituted as a party.  Before its discussion of <u>Padgett</u>, the court in <u>Pelea</u> had

already concluded that Mrs. Pelea's claim for dependency and indemnity compensation had died with her and could not be pursued by her estate. 497 F.3d at 1292. In contrast to Mrs. Hyatt's right to seek benefits under § 5121, there was no claim that could be brought by the estate in its own right. Therefore, the only possible scenario in which the estate would be entitled to anything was if reissuing the decision nunc pro tunc would result in an award of benefits prior to Mrs. Pelea's death. Because the court found that it would not, the estate had nothing to gain by being substituted. Pelea is thus entirely consistent with Padgett and does not create a blanket rule that an imminent grant of benefits is required before a party can be substituted.

Therefore, we conclude that the Veterans Court erred to the extent that it suggested that Mrs. Hyatt lacked standing because the judgment she sought to have reissued would not result in an imminent entitlement to benefits. The proper question is whether her accrued benefits claim would be "adversely affected" if the judgment on Mr. Hyatt's appeal was not reissued nunc pro tunc as of his date of death. With the correct standard identified, we turn to the Veterans Court's second ground for its decision—that reissuing the withdrawn decision would have no effect on Mrs. Hyatt's § 5121 claim.

B

Mrs. Hyatt alleges that her accrued benefits claim will be "adversely affected" if the Veterans Court's judgment is not reissued nunc pro tunc. This is so, she contends, because her claim must be based on "evidence in the file at date of death." 38 U.S.C. § 5121(a). In her view, if the decision is reissued nunc pro tunc, her chances of receiving benefits under § 5121(a) will be improved because she will be entitled to rely on the court martial records. However, if the judgment is not reissued, her claim will be

limited to the evidence in the file before Mr. Hyatt took his appeal, which the Board previously found insufficient to allow payment of benefits.

The government and the majority of the Veterans Court take issue with Mrs. Hyatt's premise that reissuing the judgment would allow consideration of the court martial records as part of her accrued benefits claim. In the majority of the Veterans Court's view, whether the decision is reissued nunc pro tunc is irrelevant to Mrs. Hyatt because her § 5121 claim "is explicitly limited to the evidence 'in the file' at the date of the veteran's death—which does not include the court martial records that the Court ordered VA to obtain on remand." Hyatt v. Peake, 22 Vet. App. at 214. We agree. The statute expressly provides that accrued benefits claims are limited to the benefits to which the veteran was "entitled at death under existing ratings or decisions or those based on evidence in the file at date of death . . . and due and unpaid." 38 U.S.C. § 5121(a) (emphasis added). By regulation, the VA has interpreted "evidence in the file at date of death" to include "evidence in VA's possession on or before the date of the beneficiary's death, even if such evidence was not physically located in the VA claims folder on or before the date of death." 38 C.F.R. § 3.1000(d)(4). Mrs. Hyatt does not challenge the validity of this regulation, nor does she argue that the VA had actual possession of the court martial records at the time of Mr. Hyatt's death. Instead, she presents several arguments for why the court martial records should nevertheless be treated as part of the file as of Mr. Hyatt's death.

First, Mrs. Hyatt suggests that this is a circumstance under which evidence can be submitted after the veteran's death under § 5121(c). That subsection provides:

> Applications for accrued benefits must be filed within one year after the date of death. If a claimant's application is incomplete at the time it is

originally submitted, the Secretary shall notify the claimant of the evidence necessary to complete the application. <u>If such evidence is not received within one year from the date of such notification, no accrued benefits may be paid.</u>

38 U.S.C. § 5121(c) (emphasis added). In <u>Hayes v. Brown</u>, the Veterans Court noted the perceived conflict between subsections (a) and (c) of § 5121. 4 Vet. App. 353, 360 (1993) ("While 38 U.S.C.A. § 5121(a) permits only evidence in the file at date of death, 38 U.S.C.A. § 5121(c) appears to contradict, or at least qualify, that provision . . . ."). However, this confusion was recognized by the VA and clarified by regulation in 2002. <u>See</u> Evidence for Accrued Benefits, 67 Fed. Reg. 9638, 9639 (Mar. 4, 2002); Evidence for Accrued Benefits, 67 Fed. Reg. 65,707 (Oct. 28, 2002); <u>see also</u> 38 C.F.R. § 3.1000(c)(1). By regulation, the evidence admissible under subsection (c) is limited to that necessary to establish that the claimant is within the category of persons eligible to receive accrued benefits under § 5121. 38 C.F.R. § 3.1000(c)(1). Because Mrs. Hyatt does not argue that the court martial records establish her eligibility as a claimant and identifies no reason for us to depart from the VA's regulation, we conclude that § 5121(c) is inapplicable in this case.

Next, Mrs. Hyatt refers to several provisions in the VA Adjudication Manual that allegedly support her position. According to Mrs. Hyatt, the Manual provides that certain evidence that is not physically "in the file at date of death" is nevertheless considered when adjudicating § 5121 claims. <u>See</u> VA Adjudication Manual, M21-1MR, Part VIII, Ch. 3.1.(f). While Mrs. Hyatt is correct that the evidence need not be physically "in the file," the Manual does require that such evidence be in the VA's <u>possession</u> as of the date of death. <u>Id.</u> This is consistent with the VA's interpretation of "evidence in the file at date of death" codified at 38 C.F.R. § 3.1000(d)(4). As Mrs.

Hyatt admits, the court martial records were not in the VA's actual possession when Mr. Hyatt died.

Finally, Mrs. Hyatt asks us to find that the court martial records fall within the ambit of "evidence in the file at date of death" because they were in the VA's constructive possession. Mrs. Hyatt argues that a finding of constructive possession is appropriate because the VA's court-ordered task of obtaining the records was entirely ministerial. Further, she suggests that such a rule would yield better results because it would eliminate uncertainty about whether veterans in cases such as this would survive until the VA obtained physical possession of records. For authority, she cites Bell v. Derwinski, 2 Vet. App. 611 (1992), a case in which the Veterans Court held that four documents that were not before the Board were nevertheless part of the record because they were "within the Secretary's control and could reasonably be expected to be a part of the record." 2 Vet. App. at 613.

We disagree that the constructive possession theory set forth in Bell should be extended to the facts of this case. First, it appears that the documents at issue in Bell were either in the VA's possession or under its control. Id. at 612-13. Moreover, three of the four documents in Bell "were generated within the VA by its agents or employees" and the fourth "was submitted to the VA by appellant as part of her claim." Id. In this case, the court martial records (assuming they still exist and are obtainable by the VA) were not generated by, submitted to, or otherwise within the VA's possession or control. Further, adopting Mrs. Hyatt's theory of constructive possession would contravene the clear limitation Congress placed on accrued benefits claims in § 5121(a). The authority

to enlarge the universe of evidence upon which accrued benefits claimants may rely lies with Congress, not this court.

Because the court martial records would not be "evidence in the file at date of death" within the meaning of § 5121(a) even if the Veterans Court reissued its decision on Mr. Hyatt's appeal nunc pro tunc, we conclude that the withdrawal of the Veterans Court's decision in Mr. Hyatt's appeal will not "adversely affect" Mrs. Hyatt. See Padgett, 473 F.3d at 1370. Accordingly, Mrs. Hyatt lacks standing to be substituted as a party. See id. Where substitution is inappropriate, nunc pro tunc relief is also unavailable. Id. ("Because of the general rule that a veteran's claim for benefits ends with his death, if [the accrued benefits claimant] could not be substituted, nunc pro tunc relief would be inappropriate.").

## III. CONCLUSION

For the foregoing reasons, we affirm the Veterans Court's decision denying Mrs. Hyatt's motions for substitution of party and for the judgment in Mr. Hyatt's appeal to be reissued nunc pro tunc as of the date of Mr. Hyatt's death.

## AFFIRMED