# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-1087

RICHARD C. FOURNIER, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 14, 2010                    Decided   June 18, 2010 )

*Thomas M. Polseno*, with whom *Glenn R. Bergmann* was on the brief, both of Bethesda, Maryland, for the appellant.

*Justin P. Zimmer* and *Joan E. Moriarty*, Deputy Assistant General Counsel; with whom *John H. Thompson*, Acting General Counsel; and *R. Randall Campbell*, Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and HAGEL and DAVIS, *Judges*.

DAVIS, *Judge*: U.S. Navy veteran Richard C. Fournier appeals through counsel from a March 4, 2008, Board of Veterans' Appeals (Board) decision that denied an effective date earlier than April 17, 1980, for a service-connected mood disorder secondary to a head injury. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). The Court assigned this case to panel in order to address the appellant's contention, set forth in his briefs, that a provision of the *VA Adjudication Procedures Manual M21-1* (hereinafter *M21-1*) was a substantive provision that entitled him to special notice procedures beyond those set forth in the regulations in effect in August 1971 when he submitted an earlier claim.

He asserts primarily that the language of an October 1971 claim denial letter from a VA regional office (RO) did not comply with the extant regulations concerning notice of the decision.[1] The appellant also argues that VA failed to comply with an *M21-1* provision requiring that he be provided with a formal rating decision setting forth the denial of his claim as contained in his 1971 application for benefits for a nervous condition. He contends that the relevant provision of the 1971 version of *M21-1* was a substantive provision. He reasons that the allegedly defective notice procedure left his 1971 claim pending and that claim constitutes a basis for an earlier effective date for his service-connected mood disorder.

We conclude, however, that the October 1971 VA letter provided the appellant adequate notification of the denial of his claim, in compliance with the laws in effect at the time. The *M21-1* provision does not alter that conclusion. The Court will therefore affirm the Board's March 2008 decision.

## I. BACKGROUND

The appellant served on active duty from April 1960 to July 1965. In the early part of the appellant's service, while walking the streets of Honolulu, he received a blow to the head with a blunt instrument during an assault. Thereafter, in June 1965, he received an honorable discharge for unsuitability based on having an "inadequate personality disorder." Record (R.) at 1347.

He submitted a claim for VA benefits for a nervous condition in July 1967. The RO denied that claim on the basis that VA diagnosed him as having an immature personality disorder, which is classified, both then and now, as a noncompensable constitutional or developmental condition. *See* 38 C.F.R. § 3.303(c) (1967) ("Congenital or developmental defects, refractive error of the eye, personality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation."). The appellant did not appeal that decision and it became final.

---

[1]The type of "notice" involved in this case is notice of the disposition of a claim. *See* 38 U.S.C. § 5104. Pursuant to current regulations, "[s]uch notice shall clearly set forth the decision made, any applicable effective date, the reason(s) for the decision, the right to a hearing on any issue involved in the claim, the right of representation and the right, as well as the necessary procedures and time limits, to initiate an appeal of the decision." 38 C.F.R. § 3.103(b) (2009); *cf.* 38 U.S.C. § 5103(a) (discussing the type of notice letter the Secretary must provide to a claimant upon receipt of an application for VA benefits).

2

In late August 1971 the appellant submitted another application, again seeking service connection for a nervous condition. Along with the application, he submitted a copy of the recommendation for separation from service, which referenced the diagnosed personality disorder. In response to the question whether he had received treatment in service, he wrote, "[S]ee record." R. at 1344.

After receiving the application in September 1971, the RO issued an October 1971 letter that read as follows:

> We received your duplicate claim for disability benefits for nervous condition. Our records disclose that we considered your claim for a service connection for a nervous condition and you were informed on January 20, 1969 that this condition was not a disability, within the meaning of current laws, for which compensation may be paid. Accordingly, we are not able to take any further action with respect to this claimed condition.

R. at 1342. The appellant attempted to reopen this claim again in 1980 and in 1988. The latter attempt eventuated in a grant of service connection in 1997 for a psychiatric disorder claimed as a residual of a closed head injury and antimalarial medication. The Board assigned a 100% disability rating, effective April 17, 1980.

## II. CONTENTIONS OF THE PARTIES

### A. The Appellant

In the decision here on appeal the Board acknowledged that neither the October 1971 claim denial letter, nor any attachment thereto, furnished any notice of appellate rights. It found, however, that under the regulations in effect in 1971, failure to notify an appellant of appellate rights, including the allotted time to appeal, did not extend the period for filing an appeal. *See* 38 C.F.R. § 19.110 (1971). The appellant explicitly stated that he did not contest this finding. *See* Appellant's Brief at 11.

Rather, the appellant argues that the October 1971 claim denial letter "was so misleading that it failed to so much as 'notify' him of the 'reason' for disallowance of his claim." Appellant's Brief at 12. He elaborates that the RO had a duty to read the claim for a "nervous condition" sympathetically, to include potentially compensable psychoneurotic disorders. Citing 38 C.F.R.

3

§ 3.109(a) (1971),[2] the appellant remarks that "a sensible explanation would have apprised Appellant of what evidence was needed to substantiate . . . a diagnosis of a mental disorder other than a personality disorder and some rationale linking that disorder to service."  Appellant's Brief at 12.

In his briefs, the appellant also pointed to a provision of *M21-1*, which reads, in relevant part, as follows:

> a. Initial Compensation Ratings.  All disabilities claimed will be given consideration as to service connection and receive a formal (coded) rating decision.
>
> b. Reconsideration By Rating Board.  In finally disallowed claims or other final rating decisions, any communication from a claimant or his representative [furnishing] new and material evidence establishing a new factual basis constitutes a claim requiring reconsideration.   Unless a specific claim is required, evidence showing entitlement to increased benefits will serve as a claim.  *If the record contains any information that the veteran believes a condition is related to service or to another service-connected disability, it becomes a claim requiring formal rating and notification of right of appeal in the event of an adverse decision.*

*M21-1*, pt. VI, ¶ 46.02 (1971) (emphasis added).  Citing the last sentence of subsection b, the appellant argued that because a sympathetic reading of the 1971 claim indicates that he believed his nervous condition was related to service, VA was bound to issue a formal rating decision.

The appellant's counsel conceded at oral argument, however, that the August 1971 claim was a duplicate claim and not a claim for reconsideration.  He also conceded that the evidence submitted with and referred to in that claim was the same evidence on which the RO had denied the claim in 1969.  This admission negates the possibility that the appellant submitted any additional evidence, much less new and material evidence.

Thus, the appellant argues that the outcome in this case is controlled by 38 C.F.R. § 3.103, which was the notice provision in effect in 1971, as augmented by the formal rating decision requirement of the last sentence of the above-quoted *M21-1* provision.  He reasons that VA's failure to read the claim sympathetically and give notice of the evidence that would have supported a claim for any psychiatric disorder left the 1971 claim pending on the date when he later obtained service connection for a mood disorder as a result of the closed head injury.

---

[2]  In 1971, this provision read, in relevant part, as follows: "If a claimant's application is incomplete, the claimant will be notified of the evidence necessary to complete the application."  38 C.F.R. § 3.109(a) (1971).

B.  The Secretary

The Secretary asserts that VA complied with the notice requirements of 38 C.F.R. § 3.103 as to the reason for the denial of the claim.  *See* 38 C.F.R. § 3.103 (1971) (claimant will be given notice of disallowance; notice to include reason for the decision, right to appeal by means of a Notice of Disagreement, and time limits in which to do so).  He points out that the reason for the disallowance of the claim is evident in the text of the October 1971 letter: VA regarded it as a duplicate to a claim that had already been rejected.  He further points out that the RO lacked authority to revise the previous 1968 RO decision "on the same factual basis." 38 C.F.R. § 3.104 (1971).

The Secretary rejects the appellant's argument that VA should have notified him of additional evidence required under 38 C.F.R. § 3.109 for two reasons.  First, § 3.109(a), on its face, applies to incomplete applications.  There was no finding that the appellant's August 1971 application was incomplete, and the appellant does not so contend.  Second, the regulation applies to "original applications . . . and to applications for increased benefits by reason of increased disability." 38 C.F.R. § 3.109(a)(2) (1971).  The Secretary asserts that the appellant's August 1991 application fell into neither category.

As to the *M21-1* provision,[3] the Secretary points out that the provision cited by the appellant references chapter 27 of *M21-1*, which deals with reconsideration of claims based on additional evidence.  The provisions of chapter 27 state that claims based on "evidence that is clearly redundant, cumulative, duplicative, or inconsequential" will not be routinely forwarded to adjudicators. *M21-1*,

---

[3] As a threshold matter, the Secretary argues that the Court may not consider the argument with respect to the manual provision because it constitutes an assertion of clear and unmistakable error (CUE) that was not raised to the Board.  *See Vanerson v. West*, 12 Vet.App. 254, 262 (1999) ("This Court does not have jurisdiction to consider claims of [CUE] in the first instance."); *see also Andre v. Principi,* 301 F.3d 1354, 1361 (Fed. Cir. 2002) (holding that "each 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it").  This argument need not long detain us.  The issue concerning the *M21-1* provision is an extension of the appellant's argument that the 1971 claim was never finally adjudicated and remained pending because of defective notice.  *See, e.g., Hauck v. Brown*, 6 Vet.App. 518 (1994) (because veteran did not receive notifice of claim denial, one-year period to file a Notice of Disagreement did not begin to run).  Because the appellant is contending that the 1971 RO notice is *not* a final decision, we agree that his argument does not constitute a CUE motion.  Valid CUE motions may only be raised against final RO or Board decisions.  *See* 38 U.S.C. §§ 5109A, 7111; 38 C.F.R. § 3.105(a) (2009); *see also* 38 U.S.C. §§ 5108, 7105(c).

¶ 27.02 (1966). Rather, "[w]hen such an application . . . is based upon the same conditions for which a claim was formerly disallowed and new and material evidence is not submitted, the veteran will be informed that in view of the determination previously made, it will be necessary to deny the claim . . . ." *Id.*, ¶ 27.07.

### III. ANALYSIS

The Board's determination of the effective date for an award of VA benefits is a finding of fact reviewed by the Court under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Link v. West*, 12 Vet.App. 39, 46 (1998); *Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). A finding of fact is clearly erroneous when the Court, after reviewing the entire evidence, "'is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In an attempt to achieve an earlier effective date for his award of VA benefits, the appellant contends that his 1971 service-connection claim remained pending until it was finally awarded in 1997. He maintains that the 1971 claim, when read liberally, included a claim for his disability of a mood disorder, which had not been finally adjudicated. A "pending claim" is "[a]n application, formal or informal, which has not been finally adjudicated." 38 C.F.R. § 3.160(c) (2009). "Consistent with this regulation . . . this Court has held that a claim remains pending–even for years– if the Secretary fails to act on a claim before him." *Ingram v. Nicholson*, 21 Vet.App. 232, 240 (2007); *but see Adams v. Shinseki*, 568 F.3d 956, 963 (Fed. Cir. 2009) (stating that "when a regional office decision 'discusses a claim in terms sufficient to put the claimant on notice that it was being considered and rejected, then it constitutes a denial of that claim even if the formal adjudicative language does not "specifically" deny that claim.'" (quoting *Adams v. Peake*, No. 06-0095, 2008 U.S. Vet App. LEXIS 694, at *9 (Feb. 20, 2008) (mem. dec.) (quoting *Ingram*, 21 Vet.App. at 255))).

A. Sufficiency of Notice

The appellant argues that the RO had a duty to read his 1971 application sympathetically to include all potentially compensable psychiatric disorders. He reasons that this duty required the issuance of a notice informing him of the generic types of evidence necessary to achieve service

connection for any psychiatric disorder. In essence, he argues that because he did not receive notice consistent with present statutory and regulatory requirements, as interpreted by recent caselaw, his August 1971 claim remained pending.

When a claimant submits a claim, it remains pending until VA issues a decision. *See Ingram*, 21 Vet.App. at 241. Specifically, the claim remains alive "until there is either a recognition of the substance of the claim in an RO decision from which a claimant could deduce that the claim was adjudicated or an explicit adjudication of a subsequent 'claim' for the same disability." *Charles v. Shinseki*, 587 F.3d 1318, 1323 (Fed. Cir. 2009) (quoting *Williams v. Peake*, 521 F.3d 1348, 1350 (Fed. Cir. 2008)). When VA takes action on the claim, however, "the onus [is on] the claimant to act within the time periods specified by statute and regulation." *Ingram*, 21 Vet.App. at 242. When VA denies a claim and the claimant fails to file a Notice of Disagreement within the one-year period following the decision, that decision becomes final. 38 U.S.C. § 7105(c); *see also DiCarlo v. Nicholson*, 20 Vet.App. 52, 55 (2006) ("Except as provided by law, when a case or issue has been decided and an appeal has not been taken within the time prescribed by law, the case is closed, the matter is ended, and no further review is afforded.").

In the Court's view, the October 1971 claim denial letter from the RO clearly complied with the requirements of VA regulations existing at that time. The notice regulation did not require that the RO's reason for denying the claim be ultimately correct or thoroughly explained, only that it be included in the notice. *See* 38 C.F.R. § 3.103 (1971); *see Natali v. Principi*, 375 F.3d 1375, 1380 (Fed. Cir. 2004) (finding that statements of the RO decision's reasons or bases were not required prior to "the Veterans' Benefits Amendments of 1989, Pub.L. No. 101-237, 103 Stat. 2062 (1988), which added the statutory provision mandating that decisions denying benefits include a statement of the reasons for the decision."). As expressed in the October 1971 claim denial letter, the RO regarded the claim submitted in the 1971 application as a duplicate of the claim denied in 1969.

Based on the contents of the October 1971 claim denial letter, the Court concludes that a reasonable person would not have delayed filing an appeal of that decision. *See Williams*, 521 F.3d at 1350 ("Final adjudication of a claim . . . requires allowance or disallowance by the agency of original jurisdiction coupled with notice to the veteran of the agency's decision, with finality of the adjudication occurring one year after the date of the notice of allowance or disallowance."). In

particular, if the appellant contemplated any other type of claim than that which was evident in the application, it was incumbent upon him to so indicate in a Notice of Disagreement or other communication to the RO. 38 C.F.R. § 3.103 (1971).

The Court disagrees that the VA's duty to read pleadings sympathetically extends as far as the appellant argues. Neither in 1971 nor now has VA ever been obligated to read a claimant's mind. It must consider only claims that may be "reasonably encompassed by several factors including: the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim." *Clemons v. Shinseki*, 23 Vet.App. 1, 5 (2009). Here, along with his September 1971 application, the appellant submitted a copy of his separation-from-service documents, and generally referred to the same record that was before VA in the 1969 decision. Thus, neither the application nor the appended documents included anything suggesting that the breadth of the appellant's claim might extend beyond the already denied service-connection claim for a nervous condition that was denied as a personality disorder. He presented no evidence not of record in 1969 that would have required the RO to reconsider that claim or adjudicate any other type of claim.

Instead, he appears to have been asking for a different outcome on the same factual basis that was before the RO at the time of its final decision in 1969, which was prohibited in the absence of a motion for revision on the basis of CUE. *See* 38 C.F.R. § 19.153 (1971). Therefore, we conclude that, in adjudicating the appellant's duplicate claim for VA benefits, the RO complied with the applicable regulations in effect in 1971, insofar as they concerned notice of denial and the reasons therefor.

### B. The *M21-1* Provision

The *M21-1* provision cited in the appellant's briefs does not alter the analysis for at least two reasons. First, subsection b of that provision deals with various forms of claims requiring reconsideration, specifically claims presenting new and material evidence and claims for increased rating. As he now acknowledges, however, the appellant's August 1971 claim falls into neither of those categories. The appellant further admits that the 1971 claim was duplicative of the claim before the RO in 1969. The provisions of *M21-1* paragraphs 27.02 and 27.07, which must be read *in pari materia* with paragraph 46.02, indicate that such a duplicate claim was not to be forwarded

to the adjudicators. This fact precludes issuance of a formal rating decision. The Court therefore concludes that paragraph 46.02 was inapplicable to the appellant's 1971 application.

Second, even assuming that the *M21-1* provision were applicable on the facts of this case, it would neither constitute a substantive provision nor otherwise create an additional enforceable right in the appellant. This Court has explained that "[r]ules fall into two main categories: substantive or interpretive." *Fugere v. Derwinski*, 1 Vet.App. 103, 107 (1990). A substantive rule "has the force of law and narrowly limits administrative action." *Id.,* (citing *Carter v. Cleland*, 643 F.2d 1, 8 (D.C. Cir. 1980) and *Guardian Fed. Sav. & Loan Ass'n v. FSLIC*, 589 F.2d 658, 666-67 (D.C. Cir. 1978)). More recently, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has indicated that when the Agency's interpretation of a statute is clear from existing regulations, any discrepancy between *M21-1* and the regulations "does not confer any rights" on a claimant. *Haas* v. Peake, 525 F.3d 1168, 1197 (Fed. Cir 2008).

Over the years, VA has maintained that "[t]he *M21-1* . . . is a procedural manual for the use of field personnel and is not intended as a vehicle to notify claimants of their rights." *Fugere*, 1 Vet.App. at 106. In *Haas*, *supra*, the Federal Circuit cited VA's position that *M21-1* "is an internal manual used to convey guidance to VA adjudicators. It is not intended to establish substantive rules beyond those contained in statute and regulation." 525 F.3d at 1196.

Nevertheless, in the course of judicial review, this Court makes its own assessment whether a particular *M21-1* provision is substantive or interpretive. "'The particular label placed upon [an *M21-1* provision] by the [Agency] is not necessarily conclusive, for it is the substance of what the [Agency] has purported to do and has done which is decisive.'" *Fugere*, 1 Vet.App. at 107 (quoting *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407 (1942) (citations omitted.)).

Thus, in particular instances, the Court has found that *M21-1* provisions are substantive and limit the Agency's actions. In *Fugere*, for instance, the Court nullified an attempt to change entitlement to benefits for hearing disability by rescinding an existing manual provision without resort to notice and comment procedures in the Administrative Procedure Act, 5 U.S.C. § 552. *See also Hayes v. Brown*, 5 Vet.App. 60, 67 (1993) (*M21-1* provisions on PTSD, which preceded formal regulations, were "the equivalent of [VA] [r]egulations"). None of these cases involved an *M21-1* provision that purportedly created additional rights beyond those of preexisting regulations on the

9

same subject. *See Cohen v. Brown*, 10 Vet.App. 128, 139 (1997) ("Where [*M21-1*] and the regulation overlap, [*M21-1*] is irrelevant.").

Here the Court holds that the *M21-1* provision at issue does not establish or alter the criteria for benefits but only illuminates a suggested procedural practice for VA adjudicators. Therefore, the *M21-1* provision does not limit Agency action. Our conclusion is reinforced by the fact that existing regulations defined the scope of the required notice of denial. Under these regulations, a reason for the denial was sufficient; the *M21-1* manual provision did not create an additional enforceable right to notification by a formal rating decision. *See Haas*, 525 F.3d at 1197. Thus, even assuming that the *M21-1* provision in question applied to the facts of this case, any failure to abide by the procedure set forth therein would not have prevented finality from attaching to the action or determination set forth in the October 1971 VA claim denial letter.

Moreover, to the extent the appellant contends that the Board failed to provide an adequate statement of reasons or bases because it did not address the *M21-1* provision, this argument must fail. For the reasons discussed above, the *M21-1* provision does not afford him any legal relief. Therefore, remand for the Board to discuss this provision is not appropriate. *See* 38 U.S.C. § 7261(b)(2) (requiring Court to "take due account of the rule of prejudicial error"); *see also Soyini v. Principi*, 1 Vet.App. 540, 546 (1991) (strict adherence to reasons-or-bases requirement is improper basis for remand where it "would result in this Court's unnecessarily imposing additional burdens on the [Board] with no benefit flowing to the veteran").

## IV.  CONCLUSION

Based on the foregoing reasoning, the Court AFFIRMS the Board's March 4, 2008, denial of an effective date earlier than April 17, 1980, for the appellant's service-connected mood disorder secondary to head injury.