Citation Nr: 1434245 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 14-20 069 ) DATE
 )
 )


On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to an evaluation in excess of 60 percent for atherosclerotic heart disease with old myocardial infarction from May 15, 2002 to December 19, 2005 and from April 1, 2006 to June [redacted], 2008, for the purposes of accrued benefits.

2. Entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU) from May 15, 2002 to June [redacted], 2008, for the purposes of accrued benefits.


ATTORNEY FOR THE BOARD

Scott Shoreman, Counsel



INTRODUCTION

The Veteran had active service from March 1971 to February 1973. He died in June 2008, and the appellant is his surviving spouse.

This matter comes before the Board of Veterans' Appeals (Board) from February 2012 and November 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania.

The issue of entitlement to a TDIU had previously been listed as being from March 15, 2002. Since service connection was not in effect for any disabilities prior to May 15, 2002, the issue has been reclassified as being from May 15, 2002.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The Veteran's atherosclerotic heart disease with old myocardial infarction was not characterized by chronic congestive heart failure, a workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope, or left ventricular dysfunction with an ejection fraction of less than 30 percent.

2. The Veteran's service-connected disabilities precluded him from securing or following a substantially gainful occupation from May 15, 2002.



CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 60 percent for atherosclerotic heart disease with old myocardial infarction from May 15, 2002 to December 19, 2005 and from April 1, 2006 to June [redacted], 2008, for the purposes of accrued benefits, have not been met. 38 U.S.C.A. §§ 1155, 5107, 5121 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.1000, 4.3, 4.7, 4.10, 4.104, Diagnostic Code 7005 (2013).

2. The criteria for a grant of TDIU from May 15, 2002 to June [redacted], 2008, for the purposes of accrued benefits, have been met. 38 U.S.C.A. §§ 1155, 5107, 5121 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.321, 3.340, 3.341, 3.1000, 4.16 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

In this decision, the Board grants entitlement to a TDIU for the entire period under consideration. As this represents a complete grant of the benefit sought on appeal, no discussion of VA's duty to notify and assist regarding this issue is necessary.

The claim for an increased evaluation arises from disagreement with the initial disability rating that was assigned following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

Additionally, an August 2008 letter was sent to the appellant informing her of the information and evidence necessary to substantiate a claim for the purposes of accrued benefits. Thus, VA's duty to notify has been met in this case.

In regards to the duty to assist, the appellant is seeking accrued benefits. The adjudication of an accrued claim is limited to the evidence physically or constructively of record at the time of the veteran's death. 38 C.F.R. § 3.1000(a) (2013); see also Ralston v. West, 13 Vet. App. 108, 113 (1999); Hayes v. Brown, 4 Vet. App. 353, 360-61 (1993). There is no indication or assertion that there is any outstanding evidence that would be in VA's constructive possession. Thus, the Board finds that there is no reasonable possibility that any further assistance would aid the appellant in substantiating her claim for accrued benefits. 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2002 & Supp. 2013); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to an appellant are to be avoided). Accordingly, it is not prejudicial for the Board to decide the issue of entitlement to accrued benefits without further development. Bernard v. Brown, 4 Vet. App. 384 (1993).

II. Law and Analysis

An accrued benefits claim arises after a veteran has died, and certain individuals may be entitled to accrued benefits under certain conditions. Applicable law provides that an individual entitled to accrued benefits may be paid periodic monetary benefits to which a veteran was entitled at the time of his death under existing ratings or based on evidence in the file at the time of his death. 38 U.S.C.A. § 5121 (West 2002 & Supp. 2013); 38 C.F.R. § 3.1000. The United States Court of Appeals for the Federal Circuit has also made it clear that, in order to support a claim for accrued benefits, the veteran must have had a claim pending at the time of his death for such benefits or else be entitled to them under an existing rating or decision. 38 U.S.C.A. §§ 5101(a), 5121(a); Jones v. West, 136 F.3d 1296 (Fed. Cir. 1998).

An accrued benefits claim is, under the law, derivative of, and separate from, the veteran's claims. See Zevalkink v. Brown, 6 Vet. App. 483, 489-490 (1994), aff'd, 102 F.3d 1236 (Fed. Cir. 1996). Thus, in the adjudication of a claim for accrued benefits, the claimant is bound by the same legal requirements to which the veteran would have been bound had he survived to have his claims finally decided.

Consideration of the appellant's claim for accrued benefits includes, generally, only evidence contained in the claims file at the time of the Veteran's death. 38 U.S.C.A. § 5121; 38 C.F.R. § 3.1000. However, in Hayes, 4 Vet. App. at 360-61, the United States Court of Appeals for Veterans Claims (Court) held that service department and certain VA medical records are considered as being constructively in the claims file at the date of death although they may not physically be in there until after that date. The pertinent provisions refer to service department records, reports of VA hospitalizations, reports of treatment by VA medical centers, reports of treatment authorized by the VA, and reports of autopsy made by VA on date of death.

Evidence in the file at date of death means evidence in VA's possession on or before the date of the beneficiary's death, even if such evidence was not physically located in the VA claims folder on or before the date of death, in support of a claim for VA benefits pending on the date of death. 38 C.F.R. § 3.1000(d)(4). The record shows that the Veteran died on June [redacted], 2008.

Generally under the applicable criteria, the effective date of an award based on an original claim shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. 38 U.S.C.A. § 5110(a) (West 2002). 

A. Increased Evaluation for Atherosclerotic Heart Disease with Old Myocardial Infarction 

Disability ratings are based upon VA's Schedule for Rating Disabilities as set forth in 38 C.F.R. Part 4 (2013). The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity in civil occupations. 38 U.S.C.A. § 1155 (2002). The disability must be viewed in relation to its history. 38 C.F.R. § 4.1 (2013). A higher evaluation shall be assigned where the disability picture more nearly approximates the criteria for the next higher evaluation. 38 C.F.R. § 4.7 (2013). 

Where, as here, the question for consideration is the propriety of the initial evaluation assigned, consideration of the evidence since the effective date of the award of service connection and consideration of the appropriateness of a staged rating are required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

For rating diseases of the heart, one MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for rating, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104, Note 2. 

Diagnostic Code 7005 provides ratings for arteriosclerotic heart disease (coronary artery disease), and requires documented coronary artery disease. Arteriosclerotic heart disease resulting in more than one episode of acute congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent, is rated 60 percent disabling. Arteriosclerotic heart disease resulting in chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent, is rated 100 percent disabling. A Note to Diagnostic Code 7005 provides that, if nonservice-connected arteriosclerotic heart disease is superimposed on service-connected valvular or other non-arteriosclerotic heart disease, the adjudicator is to request a medical opinion as to which condition is causing the current signs and symptoms. 38 C.F.R. § 4.104. 

The Veteran had a VA examination for the heart in February 2003. It was noted that he developed a myocardial infarction in 1997 and underwent angioplasty. In 2000 he developed congestive heart failure and a study showed an ejection fraction of 38 percent. METs could not be measured because the Veteran could not run on a treadmill. Daily activities were markedly diminished, and the examiner felt this was mostly because of the Veteran's obesity. The diagnosis was hypertensive atherosclerotic heart disease, old myocardial infarction and angina pectoris, status post angioplasty, global hypokinesia, and congestive heart failure partially compensated.

An echocardiogram from January 2004 VA treatment showed a left ventricular ejection fraction of 60 percent, and August 2004 VA treatment records indicate a left ventricular ejection fraction of 45 to 50 percent. VA treatment records show that the Veteran was hospitalized in March 2006 due to myocardial infarction and acute pulmonary edema. An August 2007 echocardiogram from VA treatment showed an ejection fraction of 55 percent.

The Veteran did not qualify for a 100 percent evaluation, the next highest available, because the record does not show that he had an ejection fraction of less than 30 percent. The lowest measured ejection fraction was 38 percent, and later testing showed an ejection fraction ranging from 45 percent to 60 percent. Furthermore, although the Veteran was diagnosed with congestive heart failure, the record does not show chronic congestive heart failure. Finally, the record does not show that testing was performed to measure the METs that resulted in dyspnea, fatigue, angina, dizziness, or syncope. See 38 C.F.R. § 4.104, Diagnostic Code 7005.

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

The Board finds that the rating criteria contemplate the Veteran's atherosclerotic heart disease with old myocardial infarction. The disability was productive of a decreased ejection fraction, and a temporary 100 percent evaluation was assigned following surgery. The rating criteria are therefore adequate to evaluate the Veteran's disability and referral for consideration of extraschedular rating is not warranted.

Finally, in light of the holding in Fenderson, the Board has considered whether the appellant is entitled to "staged" ratings for his service-connected atherosclerotic heart disease with old myocardial infarction, as the Court indicated can be done in this type of case. Based upon the record, the Board finds that at no time during the claims period has the disability on appeal been more disabling than as currently rated under the present decision of the Board (other than for the period when the Veteran was assigned a temporary total disability rating). 

In sum, the preponderance of the evidence is against the claim. There is no doubt to be resolved, and an initial evaluation in excess of 60 percent for atherosclerotic heart disease with old myocardial infarction is not warranted. See 38 C.F.R. § 5107(b); 38 C.F.R. §§ 3.102, 4.3 Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

B. Entitlement to a TDIU from May 15, 2002 to June [redacted], 2002

The appellant contends that the Veteran was entitled to TDIU benefits as of May 15, 2002. Based on the evidence of record, the Board finds that entitlement to a TDIU based on his service-connected disabilities is warranted from that date.

A total disability rating may be assigned, where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as the result of service-connected disabilities. See 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2013). Consideration may be given to a veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or the impairment caused by any nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19 (2013). 

To qualify for a total rating for compensation purposes, the evidence must show: (1) a single disability rated as 100 percent disabling; or (2) that the veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities and there is one disability ratable at 60 percent or more, or, if more than one disability, at least one disability ratable at 40 percent or more and a combined disability rating of 70 percent. 38 C.F.R. § 4.16(a). Disabilities that are not service connected cannot serve as a basis for a total disability rating. 38 C.F.R. §§ 3.341, 4.19.

Unlike the regular disability rating schedule, which is based on the average work-related impairment caused by a disability, "entitlement to a TDIU is based on an individual's particular circumstances." Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). Therefore, in adjudicating a TDIU claim, VA must take into account the individual veteran's education, training, and work history. Hatlestad v. Derwinski, 1 Vet. App. 164, 168 (1991) (level of education is a factor in deciding employability); see Friscia v. Brown, 7 Vet. App. 294 (1994) (considering veteran's experience as a pilot, his training in business administration and computer programming, and his history of obtaining and losing 19 jobs in the previous 18 years); Beaty v. Brown, 6 Vet. App. 532 (1994) (considering veteran's 8th grade education and sole occupation as a farmer); Moore v. Derwinski, 1 Vet. App. 356 (1991) (considering veteran's master degree in education and his part-time work as a tutor).

Service connection was granted on a retroactive basis for atherosclerotic heart disease with old myocardial infarction in a February 2012 rating decision, with an effective date of May 15, 2002 and an evaluation of 60 percent. A temporary 100 percent evaluation was awarded from December 19, 2005 through March 31, 2006. As of May 15, 2002, service connection was also in effect for diabetes mellitus, with an evaluation of 20 percent. The Veteran's combined evaluation was 70 percent as of May 15, 2002. Service connection was later awarded for loss of use of the feet associated with diabetes mellitus, type II, peripheral neuropathy of the upper and lower extremities, residuals of a scar status post coronary artery bypass surgery, and erectile dysfunction associated with diabetes mellitus, type II. The combined evaluation was 90 percent as of September 9, 2004, and 100 percent as of September 8, 2005. Thus, the Veteran met the threshold schedular requirements for an award of TDIU benefits under 38 C.F.R. § 4.16(a) as of May 15, 2002 because there was one disability rated as 60 percent disabling and the combined evaluation was 70 percent.

In December 2004, the Veteran had a VA examination for peripheral nerves. It was noted that he was diagnosed about a year before with diabetic peripheral neurotomy and that at the time he complained of imbalance and paresthesias in the lower extremities, which he then also experienced in his upper extremities. There were open sores on the lower extremities, a loss of pain perception in the plantar region, and an inability to distinguish between hot or cold water. On examination there was a loss of pinprick and touch sensation distally in the lower extremities and up to the mid-forearms in a glove and stocking type distribution. There was also a loss of vibratory perception at the ankles and loss of position in the great toes. The skin was hyperpigmented in the lower extremities. Deep tendon reflexes were trace in the upper extremities and absent in the lower extremities. The Veteran was in a wheelchair.

The Veteran underwent another VA examination in February 2006 for peripheral nerves at which he reported that beginning about five years earlier he fell frequently, could not feel the floor, and could not distinguish between hot and cold water. He also reported weakness, tremors, stiffness, numbness, paresthesias, pain, dysesthesias, and impaired coordination. On motor examination the Veteran was unable to properly move his extremities, and there was no sensation in the extremities. Deep tendon reflexes to the lower extremities were absent and the Veteran was noted to need a wheelchair. The examiner felt that the Veteran needed constant help for all his activities of daily living, and the effect on his occupation was not discussed because he was not employed. At a January 2008 VA examination, it was noted that the Veteran's diabetic peripheral neuropathy had gotten progressively worse. 

Resolving reasonable doubt in the appellant's favor, the Board concludes that the evidence satisfactorily shows the criteria for an award of TDIU benefits were met from May 15, 2002. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. The record shows that the Veteran's neuropathy severely limited his mobility and dexterity, and his atherosclerotic heart disease with old myocardial infarction further limited his physical activities. 


ORDER

An initial evaluation in excess of 60 percent for atherosclerotic heart disease with old myocardial infarction from May 15, 2002 to December 19, 2005 and from April 1, 2006 to June [redacted], 2008, for the purposes of accrued benefits, is denied.

Subject to the law and regulations governing payment of monetary benefits, TDIU is granted from May 15, 2002 to June [redacted], 2008, for the purposes of accrued benefits.



____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs